## THE MAYOR AND CITY COUNCIL OF BALTI-
MORE *vs.* THE SMITH & SCHWARTZ BRICK
COMPANY.

*Opening Streets—Appeal from Assessment of Benefits—Evidence to Show Value of Land and Amount of Benefit—Sales of other Property—Practice.*

Where a party appeals under Baltimore City Code, Art. 48, sec. 10, from the assessment of benefits in the award of the Commissioners, for Opening Streets, the question as to the amount of damages awarded to the same party for opening the same street is not open to review on such appeal.

The burden of proof in such case is on the city to establish the amount of benefits accruing to the land of the abutting owner by the opening of the street.

The trial Court cannot be required to permit the book of the proceedings of the Commissioners, in regard to the opening of the street, to be taken to the jury room.

Where a lot of ground assessed for benefits from the opening of a street is below the level of the same, and an appeal is taken by the property owner from the assessment of benefits, evidence tending to show the cost of filling the lot to the level of the established grade is relevant, when it has been testified that the proper mode of determining the increase of value is by considering such cost.

The evidence in such case should be directed to proof of the market value of the land in its present condition, and then to the question how much will that value be increased by opening the street.

In order to ascertain the market value of a lot of ground, evidence of prices paid for similar land in the vicinity, at voluntary sales, within a reasonable time, is admissible.

The opinions of witnesses acquainted with the land in question, and having sufficient knowledge of the subject, are admissible to prove its market value, and the question whether a witness is qualified to give an opinion must be left in a large measure to the discretion of the trial Court.

Appeal from the rulings of the Baltimore City Court (WRIGHT, J.), on the trial of an appeal from the award of

the Commissioners for Opening Streets in Baltimore City, in the matter of the opening of Madison street, from Patterson Park avenue to Grove alley, assessing benefits to the Smith & Schwartz Brick Company.   The exceptions to the evidence are stated in the opinion of the Court.   The appellee offered the following prayers:

1. "The property owner prays the Court to instruct the jury, that in making up their verdict the only matter for their inquiry is the amount of increase in the actual market value of the lots fronting on Madison street, which will be caused by the acquisition through these proceedings, by the Mayor and City Council of Baltimore, of title to the land in the bed of said street to be used as a public street, and their verdict should be limited to such increase, if any, there be, and they cannot enquire into or take into consideration the amount allowed by the Commissioners for Opening Streets to the said property owner as damages for the land in the bed of said street.   (Granted.)

2. The property owner prays the Court to instruct the jury that the burthen of proof rests upon the Mayor and City Council of Baltimore to show to the satisfaction of the jury the extent of the increase in the market value of the lots of said property owner binding on Madison street, as the result of the opening of said street, as the opening is defined in the first prayer of said property owner. (Granted.)

And the Mayor and City Council offered the following prayers:

*1st Prayer of City.*—The Mayor and City Council pray the Court to instruct the jury that, in assessing benefits for opening Madison street, the jury cannot indulge in vague. speculation, or conjectures; that they are to assess against the property of the abutting owners such benefits, if any, as it is, in their opinion, both from viewing the land and hearing the testimony, fairly and reasonably apparent that the property of such abutting owners will receive from the proposed improvement, other than the general benefit to the community at large, and that nothing is to be consid-

ered a benefit which does not enhance the value of the property.   (Granted.)

*2nd Prayer of City.*—The fact, if it be a fact, that some of the lots assessed for benefits will require large expenditures in money or labor before they are brought into a condition to be used, does not excuse them from the payment of benefits ; provided the benefits assessed against such property do not exceed the increase in the value of the property caused by the proposed opening of Madison street. (Granted.)

*3rd Prayer of City.*—The jury have the right, and it is their duty, if they think the amount awarded to the appellant, the Smith & Schwartz Brick Company, for the lots taken for the bed of Madison street, more than the fair market value of such lots so taken at the present time and in their present condition, to reduce the said award to an amount equal to such fair market value of such property in its present condition, at a fair and not at a forced sale. (Rejected.)

The inquisition of the jury assessed the benefits accruing to the lots in question at $7,478, and the Mayor and City Council appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Thomas G. Hayes, City Counsellor,* and *William S. Bryan, Jr., City Solicitor,* for the appellant.

No Court could, it is submitted (unless it considered itself bound by the stubborn words of the statute), deem it just and proper to allow the property holder to represent through one set of agents to the Board of Commissioners, that the land through which the projected street will run is very valuable, and thus have both the benefits and damages placed by them at a high figure, and then accepting the damages awarded on this erroneous basis of the value of the land, show through another and different set of agents

that the land is really of very little value and is incapable of any very beneficial use, and that the benefits as assessed are therefore too high, to allow the property owner to keep the heavy damages awarded on the one theory and require him to pay light benefits assessed on the opposite theory. This, to a plain man, would look very like a fraud on the general taxpayer. And yet, if this ruling is to stand, this is what will frequently occur.

The benefits and damages, in the very nature of things, are relative. It is only the *difference* between the two that is really material to either the city or the taxpayer. In making a settlement the one is always set off against the other, and it is only the difference between them that is ever paid by the property holder, or the city, as the case may be. (Article 48, section 5, Baltimore City Code.) It is, therefore, absolutely essential to any approximation to fairness to the parties concerned that *the same judgment* as to the valuation of the land affected should control in awarding both.

The second prayer of the appellee as to the burden of proof should have been rejected. As this is *an appeal* from the action of a board of sworn public officers of a *quasi* judicial character, it is to be presumed, until the contrary is made to appear, that their action was right; and so far as there is "any burden of proof" in the case at all, it is upon the property holder to show that the original assessment, made by the Commissioners, after giving it a full hearing, was erroneous. The property owner is allowed to open and close. *Burt* v. *Wigglesworth,* 117 Mass. 306.

The enquiry really is, " Did the Street Commissioners make a mistake?" It cannot be that the property owner can have the very material advantage of opening and closing the case before the jury on the theory that he is the plaintiff, and then insist that we should bear the burden always put upon the plaintiff. But it is misleading to speak of a burden of proof in a case which does not depend upon the evidence, and where the verdict was not to be " according

to the evidence." The jury had the right and it was their duty to consider the *view* of the property. The award was not to be controlled by the testimony. *Archer's case,* 9 G. & J. 479.

The evidence admitted below as to the cost of filling certain of the lots assessed for benefits up to the grade of the street was clearly irrelevant. The value of the land as it lay without a street through it, and then its value as it lay after the street is run through it, being ascertained, the difference between the two is the benefit derived from the street. Opinions and surmises as to what it would cost to place the land in a condition for sale to be followed by speculative opinions as to what the land will *then* be worth are too remote and uncertain to be safeguards to the jury. *Burt* v. *Digglesworth,* 117 Mass. 306; *Friedenwald* v. *Baltimore,* 74 Md. 125. As said in *C. P. R. R.* v. *Pearson,* 35 California, 263, " the question for the Commissioners to ascertain and settle was the present value of the land in its then condition, and not what it would be worth if something more should be annexed to it at some future time."

Evidence of the prices received at particular sales of lots of ground in the neighborhood of the land being valued was not admissible. There are so many elements other than the value of the land that contribute to fix the price received at a sale of real estate; so much depends on the necessities and intelligence of the parties to the contract, upon the purposes for which the land is needed, the urgency of the need and the peculiar adaptability of the land sold to supply those needs, that it has been almost uniformly held that individual sales are not admissible as evidence in chief. *Shuson* v. *Chicago, etc., R. R.* 27 Minn. 287; *East Pennsylvania R. R.* v. *Heister,* 40 Pa. St. 53, 55; *Pittsburg, etc., R. R.,* v. *Vance,* 115 Pa. St. 331; *Hays* v. *Briggs,* 74 Pa. St. 374; *Penna. and N. Y. R. R.* v. *Bunnell,* 81 Pa. St. 414; *C. P. R. R. Co.* v. *Pearson,* 35 California, 247. Apart from this the price per acre paid for particular ground three years ago could not be evidence. Assuming, and it may

be a very violent assumption, that the price Mr. Smith gave for it was its market price *then*, it does not follow that it is its market price *now*. Such evidence has been expressly decided to be inadmissible. *Detrick* v. *L. & N. R. R. Co.* 12 Nebraska, 229; *G. C. & S. F. Ry. Co.* v. *Lyon*, 2 Texas Ct. of Appeals, Civil Cases, sec. 139.

*Bernard Carter*, for the appellee.

It was held in *Moale* v. *M. & C. C. of Balto.*, 5 Md. 324, that evidence of the sales of the land itself, and of other similar land in the vicinity, made within a reasonable time before the period in question, is admissible to show its market value. In view of this direct decision, it is not necessary to look either at the reason of the thing or to decisions in other States. But it will be found, not only that the reason of the thing is in accord with the Maryland decision just quoted, but the great weight of authority is to the same effect.

The testimony is declared to be admissible by the Courts in Massachusetts, New York, New Hampshire, Illinois, Iowa and Wisconsin. I select from among the cases in these States, the following: *Wynan* v. *Lexington, &c., R. R. Co.*, 13 Metcaff 316; *Paine* v. *Boston*, 4 Allen, 168; *Shattach* v. *Stoneham R. R.*, 6 Allen 115; *Benham* v. *Dunbar*, 103 Mass. 365; *N. Y. L. R. R.* v. *Arnot*, 27 Hun. 151; *St. Louis R. R.* v. *Haller*, 82 Ill. 208; *Colbertson & Blair Co.* v. *Chicago*, 111 Ill. 651; *Cherokee* v. *S. C. & B. Co.*, 52 Iowa, 279; *March* v. *Portsmouth & Concord R. R.*, 19 N. H.; *Watson* v. *Milwaukee, &c. R. R. Co.*, 57 Wis. 332; *Pierce on R. R.*, page 224. In regard to the degree of similarity which must exist, and the nearness in respect of time and place, no general rules are laid down; these are matters with which the trial judge is usually conversant, and they must rest largely in his discretion. 6 Allen, 115; 103 Mass. 365.

But in addition to the evidence of sale of the property itself, and of other similar property, it is well settled that

the other kind of evidence, above mentioned, is admissible
to assist the jury in ascertaining the value of the property
in question; that is to say, the opinions and judgments of
intelligent and practical men acquainted with the land, its
value, and the subject-matter of improving and developing
such land, may be given in evidence to show its market
value before the improvement in question (in this case a
street) is made, and what will be its market value after
such improvement; and that such witnesses may be re-
quired to give the reasons on which the opinions they
express are based, either on direct-examination or cross-
examination; and as to the admissibility of this character
of evidence, there does not seem to be any conflict of
authority. The authorities on this point will be found cited
and approved in *Elliott on Roads and Streets*, 197, 198;
*Pierce on Railroads*, 225, 227; *Lewis on Em. Domain*, sec-
tions 436, 437. Among those cited we refer to *Dwight* v.
*County Commissioners*, 11., Cushing 201; *Shaw* v. *City of
Charlestown*, 2 Gray, 109, 110; *Illinois & W. R. R.* v.
*Vanhorn*, 18 Illinois, 258; *Dickenson* v. *Fitchburg*, 13 Gray,
546; *Sexton* v. *North Bridgewater*, 116 Mass. 209; *Haw-
kins* v. *Fall River*, 119 Mass. 94.

It is very clear that the only way that the condemnation
of land for a street can benefit the land binding thereon is
that it is the *first* step towards the construction of a *usable*
highway or street on which houses to be built shall bind;
and it is equally certain that in most cases at least this *first
step* is absolutely inefficacious until the other steps are taken,
to-wit, the conversion of the hills and valleys which still
remain after the condemnation into a graded surface (and as
people do not *ordinarily* buy houses in the city on streets
not paved, the grading and paving therefore go together),
until the street is paved; and therefore the best way in
which lots can be sold or leased by virtue of their frontage
on a street is by offering them for sale or lease on a graded
and paved street.

Now, to whatever extent the putting of a graded and

paved street through land has increased its market value over and above what its value was before it had such street, that increase in value has come from two things: 1st, the acquisition of the title to the bed of the street, and 2d, the grading and paving thereof.   Therefore, to ascertain what amount has been added to the value of land in the city of Baltimore, by the condemnation *only* of the land for the street, the very *best* way, and, indeed, *the only practicable* way, is to ascertain what the market value of the land will be when it had not a theoretical *or unusable* highway, but a real city street, that is, a graded and paved one; and then by ascertaining what was the value of that same land before it had the street, and what it will cost to put the land itself into a condition to be offered as building lots, and the cost of the grading and paving the street, we ascertain all the elements which have entered into its value as building lots, on graded and paved street, except the element derived from the condemnation simply, and therefore we get this latter element by subtracting from the value of the lots on the graded and paved street, the sum of the value of the land as it originally stood, and the cost of placing it and the street in a condition to yield the increased value which it has when so ready to be sold as building lots.

BOYD, J., delivered the opinion of the Court.

In this case we are called upon to review the rulings of the Baltimore City Court at the trial of an appeal by the Smith & Schwarz Brick Company, from an award of the Commissioners for Opening Streets in the city of Baltimore, assessing benefits to said company in the matter of opening Madison street from Patterson Park avenue to Grove alley in said city.   There are nine bills of exceptions in the record which we will consider in their order.   The first presents one of the most important questions to be determined by us.   The Mayor and City Council of Baltimore moved the Court to direct the clerk to swear the jury to inquire both

as to benefits and damages awarded to the company. ·
The Court overruled the motion and instructed the clerk to
swear the jury as to benefits only, which was accord-
ingly done.   The city contends, that notwithstanding the
company only entered an appeal from the assessment of
benefits, the whole action of the Commissioners ought to
have been reviewed and the jury required to inquire into
the assessment of damages as well as benefits.

That proposition is disputed by the company, which con-
tends that the Court was right in limiting the inquiry of the
jury to the benefits assessed to it, that alone being the sub-
ject and cause of the appeal.   It is necessary for us to
examine the statutes and ordinances under which these
proceedings were conducted.

By section 806 of Article 4 of the Code of Public Local
Laws, it is enacted that "The Mayor and City Council of
Baltimore shall have full power to provide for laying out,
opening   *   *   *   *   any street   *   *   *  ·*   *   to
provide for ascertaining whether any and what amount in
value of damage will be caused thereby, and what amount
of benefit will thereby accrue to the owner or possessor of
any ground or improvements within or adjacent to said city,
for which such owner or possessor ought to be compen-
sated, or ought to pay a compensation ; and to provide for
assessing and levying, either generally on the whole assess-
able property of said city, or specially on the property of
persons benefited, the whole or any part of the amount of
damages and expenses which they shall ascertain will be
incurred in locating, opening,   *   *   *   *   any street
*   *   *   in said city; to provide for granting appeals to
the Baltimore City Court from the decisions of any Com-
missioners, or other persons appointed in virtue of any ordi-
nance, to ascertain the damage which will be caused or the
benefit which will accrue   *   *   ·*   *   and for securing
to every such owner and possessor the right   *   *   to
have decided by a jury trial whether any damage has been
caused or any benefit has accrued to them, and to what
amount," etc.

The ordinance of the city passed in pursuance of that statute provides for the appointment of three Commissioners for Opening Streets. They are required to ascertain whether any and what amount of damages the owners of the property will sustain by the opening of the street, for which they ought to be compensated.

Having ascertained the whole amount of damage for which compensation ought to be awarded and the probable expenses in the proceeding, they are then required to assess all the ground and improvements within and adjacent to the city, the owners of which they decide and deem to be directly benefited by the opening of the street. If the direct benefits assessed do not equal the damages awarded and expenses incurred, the difference is to be paid by the city and provided for by a general levy. An opportunity is then given to interested persons to appear before the Commissioners, who can review their own proceedings, and when they make their final award of damages and benefits they file them with the Register of the City, who gives notice through the newspapers of the right of parties affected by such awards to appeal to the Baltimore City Court.

Section 10 of Article 48 of the Baltimore City Code provides for an appeal by " any person or persons or corporations who may be dissatisfied with the assessment of damages *or* benefits, etc.," by petition in writing to the Baltimore City Court. That Court is then required to fix a day to hear any such appeal and to direct the Clerk to issue a *subpœna duces tecum* to the Register of the City, requiring him to deliver to the Court the record of proceedings of the Commissioners, and all maps, plats, documents and papers connected with such record, and the Court is given " full power to hear and fully examine the subject and decide on the said appeal." Provision is made for trial by jury of any question of fact, and if necessary for them to view any property in the city or adjacent thereto, to ascertain and decide on the amount of damages or benefits under the direction of the Court. The Court is also vested

with the power to amend and supply defects and omissions in the record of the proceedings of the Commissioners and to increase or reduce the amount of damages and benefits assessed. It is contended by the attorneys for the city that this section of the ordinance brings the whole case before the Court, and therefore it was proper to direct the jury to review the action of the Commissioners in assessing the damages as well as the benefits. But we do not find anything in that section or the other provisions of the law to sustain that contention.

The Commissioners for Opening the Streets, in assessing damages, are required to value the property to be taken for the bed of the street as if no street was to be opened, and in estimating the value of the property to be condemned are not to consider the fact that a street is to be opened. *Moale* v. *Mayor, etc., of Baltimore,* 5 Md. 334. They are required to fix the compensation to be paid to the owners for the ground or improvements to be taken from them without regard to the use to be made of them. They then ascertain the aggregate of such damages or compensation, and having added the estimated expenses of the proceedings, they are prepared to furnish the city with the cost of opening the street. That part of their work is completed (subject, of course, to their right of revision, appeal, etc., as provided by the ordinance.) The next step taken is to determine where the money is to come from. They then decide whether there is any ground or improvements in or adjacent to the city, the owners of which will be *directly benefited* by the opening of the street. Such as they find will be so benefited they assess to the extent of such direct benefits, and if the aggregate of the benefits so assessed is not sufficient to pay for the opening of the street, the balance is made up by the city by a general levy. In other words, they take such property as is needed for the bed of the street and allow the respective owners compensation for it according to its *then market value*; they then direct that A, B and C, as owners of ground or improvements some-

where in or adjacent to the city, will be *directly* benefited *after the street is opened*, determine how much, and so assess them.  If there is a shortage in the benefit column the account is balanced by the city.  It matters not whether A's property thus to be benefited is adjoining to or a part of the property taken for the bed of the street, or whether it is on another square on the street to be opened or in some other locality; if it will be *directly* benefited he is assessed accordingly and called upon to contribute to the payment for said street to the extent he is so benefited.  It seems clear that the two transactions of fixing damages or compensation, and of assessing benefits, are separate and distinct. If, therefore, A is satisfied with the damages allowed him, but is dissatisfied with the assessment of benefits (to use the language of the ordinance), why should his appeal from the latter necessarily carry with it the consideration of the former?  By limiting his appeal to the one, as was done in this case, he notifies the city he is satisfied with the other. Both have been made by the city through its officers, and if it is not satisfied with either it can now appeal, notwithstanding the assessment was made by those of its own selection.  There is therefore no reason why the jury should review the action of the Commissioners in fixing damages on an appeal from the assessment of benefits, and we do not think a proper construction of the ordinance would have justified the Court in granting the city's motion.

There is nothing in the fact that the whole record of the proceedings of the Commissioners must be brought before the Court to sustain the city's contention.  It might disclose. such defects and omissions as the Court could amend or supply, which should be corrected, and it would be very difficult, if not impossible, to properly review the action of the Commissioners in either fixing damages or assessing benefits, without having the whole record before the Court.  If an appeal is taken by a person whose property is assessed for benefits, but has no claim for damages, none of his property being taken, the whole record and all proceedings

are brought before the Court.   If some other company had owned the ground included in the bed of the proposed street, the Court could not have permitted the jury on the appeal of the Brick Company to increase or reduce the amount of damages allowed the other company, except by consent of the parties; and we see no reason why the jury should be permitted to increase or reduce the damages allowed the Brick Company when it has only taken an appeal from the benefits assessed against its property.

The jury is authorized by the ordinance to ascertain and decide on the amount of damages *or* benefits, clearly meaning that it can ascertain the amount of the one before it by appeal, but not of both, unless an appeal has been taken from both.   The Court therefore committed no error in overruling this motion of the city.

The second and third bills of exceptions can be considered together.   The evidence shows that a number of the lots of the company which will front on the proposed street, and have been assessed for benefits, were below the established grade of the street.   The company offered to prove the amount of filling necessary to bring them to that grade, to fit them for use for building purposes.  · The city objected, but the Court overruled the objection and permitted the company to prove the estimated amount of filling necessary in each of the lots.   In such cases jurors are entitled to have before them any facts that will aid them in reaching proper conclusions.   The opening of the street having been determined to be a direct benefit to these lots, the next inquiry was how much will they be benefited.   Different modes may be adopted for determining that question.   A lot which would be left eight feet below the grade of the street after it is opened, would not be benefited, as much as it would be if on the level of the proposed street.

Hence, in ascertaining the amount of benefits, testimony tending to show the cost of filling the lots to the level of the established grade will be relevant.   The jury was authorized by the ordinance to view the premises, and did so

in this case. When they went upon the property the ground to be included upon the bed of the street might appear to be level, or nearly so, with that adjoining it on either side, and hence, in assessing benefits, they might have been misled, unless they were informed how much filling would be required to bring the adjoining property to the level of the established grade and what the cost would be. If a lot was worth one thousand dollars before the opening of the street and would be worth two thousand dollars after it was opened, without any work being done on it, the benefit to it would manifestly be one thousand dollars; but if it would cost five hundred dollars ˙to bring it to the grade of the street, so as to give it the value of two thousand dollars, it is equally clear it would really only be benefited five˙ hundred dollars. Some of the witnesses testified that the proper way of determining how much the lots would be benefited˙ is to ascertain the market value of the ground fronting on the line of the street in its present˙ condition before the street is condemned, to which add the cost of placing the lots and the street in such condition as that the lots could be disposed of with a front on Madison street, graded, curbed and paved, and determine what the market value of the lots would then be. ˙Then subtract from that the cost of grading the lots, and of grading, paving and curbing the street, added to the present market value of the lots, and the difference would closely approximate the benefit to be derived from the opening of the street. If that be correct, which was for the jury to determine, they were entitled to be informed on all these subjects. The Court could not say, as a matter of law, that the jury could not consider that method of reaching a conclusion in the face of the testimony of experienced and competent men˙ that it was the correct method. It may be much more difficult to fix a value on lots fronting on ungraded and unpaved streets than it is to determine the value of those on a graded and paved street, and inasmuch as city lots are not generally disposed of for building purposes until the streets on which

they front are graded and paved, it would reflect some
light on the question at issue, by giving the jury some in-
formation on these subjects.   The city had the privilege of
having the jury instructed as to what they should be guided
by in making up their verdict, and we do not see how it
could have been injured by the rulings of the Court on this
question.

The fourth and fifth bills of exceptions relate to the mode
of proving the market value of the property assessed for
benefits.   It is denied by the city that prices received at
particular sales for lots of ground in the neighborhood of
land, being valued by the jury are admissible in evidence.
In a case of this kind the evidence should be directed (*a*)
to the proof of the market value in the present condition
of the property, and then (*b*) to how much will the present
market value be increased by opening the street.   The
difficulty generally presented is how to determine the mar-
ket value.   The authorities on this subject are by no means
uniform.

It is generally conceded that the opinions of witnesses
having sufficient knowledge on the subject and acquainted
with the land in question, are admissible to prove such
value; and that the question as to whether a witness is
qualified to give an opinion must be left, in a large measure,
to the discretion and judgment of the trial Court, but of
course that discretion is not without limit.   If such a wit-
ness be produced, the weight of his testimony must depend
largely upon the reasons he assigns for his opinion.   If he
be unable to give some intelligent reasons for his opinion
as to value, a jury will not likely be much influenced by it.
If he knows of recent sales of similar properties, unaffected
by a condition of affairs peculiar to them, the prices realized
at such sales would almost necessarily influence his judg-
ment; and if called upon to give his reasons for naming
the value of property fixed by him, the first one likely to
be assigned by him is that such other properties brought
certain prices.   We all know, from observation, if not from

experience, that if inquiry is made as to the value of a lot on a certain street in a city or town where other sales have been recently made, it is generally answered by naming the prices realized at such sales.   If twelve jurors are taken upon land to ascertain its value, with which they are unacquainted, the first question that is suggested to them is, "What does land in this neighborhood sell for?"   As was said in *Moale* v. *Mayor, etc., of Baltimore,* 5 Md. 324, "with a view to get at this (the value of the lot), the neighboring and contiguous lots may be looked to, but they do not furnish an unerring standard to measure the value of the lot condemned."   The property sold may, owing to peculiar circumstances, have brought more or less than the real market value, but those circumstances can be explained, and if it is similar in character, location, etc., and the sale was of a sufficiently recent date and was not made under unusual conditions, the price realized would help a jury to reach a just and proper conclusion.   They are not required to adopt a price fixed by other sales, but they consider it in connection with their own view of the land and the other evidence in the case.   We think, therefore, that the prices realized at sales of the land in question and of similar land in its vicinity, made within a reasonable period of time theretofore, being voluntary and not forced sales, are admissible in evidence, either on direct or cross-examination of witnesses conversant with the facts.   This view is sustained by *Moale's case, supra*; *Pierce on Railroads,* 224; *Lewis on Eminent Domain,* sect. 443, &c.; *Wyman's case,* 13 Metc. 316; *Paine* v. *Boston,* 4 Allen, 168; *Sawyer* v. *Boston,* 144 Mass. 470; *Provision Co.* v. *Chicago,* 111 Ill. 651; *Cherokee* v. *S. C. Co.,* 52 Iowa, 279; *March* v. *P. & C. R. R. Co.,* 19 N. H. 372; *Washburn* v. *M. & L. W. R. R. Co.,* 59 Wis. 364; *Randolph on the Law of Eminent Domain,* sec. 236, and other authorities that might be cited.   As the evidence objected to was admissible, under the principles above announced, there was no error in the Court's rulings in the fourth and fifth exceptions.

Our views expressed on the second and third bills of exceptions avoid the necessity of discussing the sixth.

In regard to the testimony of Patrick Reddington, presented by the seventh exception, there may be some question whether the Court ought to have permitted him to testify in chief as to what rate he did the grading on the Union Railroad. He may have made special arrangements with the company, and it did not necessarily follow that, because he did the work at a certain price, it was a fair or the usual price for grading. But, as his answer corresponded with the prices established by all the witnesses who testified on that subject, the appellant could not have been injured by that portion of his evidence.

The company offered two prayers, which were granted, and the city three, the first and second of which were granted and the third rejected. The first prayer of the company and the third of the city present the same question raised by the first bill of exceptions and require no further comment. The second of the company instructed the jury that the burden of proof rests upon the Mayor and City Council of Baltimore to show to the satisfaction of the jury the extent of the increase of the market value of the lots of said property owner binding on Madison street, as the result of the opening of said street. We think this prayer was unobjectionable. The burden was on the city to establish the benefits this property was to be charged with. It certainly could not be said that the burden was cast on the company to prove that it was not benefited as much as the city claimed it was. There is no presumption of law in these cases that the assessment of the Commissioners is correct, but under the very terms of the ordinance the jury is "to ascertain and decide on the amount of damages or benefits," and in this case, as we have already decided, was confined to the amount of benefits.

No authority has been cited, and we think none can be found to require the Court to permit the book of the proceedings for the opening of Madison street to be taken by

the jury to their room on the motion of the city. The refusal of the Court to do this is the subject of the ninth and last exception.

We have thus considered all the bills of exceptions in the record. Some points that were argued we might have discussed more at length, but we have given them all careful consideration and are of the opinion that the rulings of the Court below must be affirmed.

*Rulings affirmed with costs to the appellee.*