# THE WESTERN UNION TELEGRAPH COMPANY

## *vs.*

## CARL RASCHE AND FERDI RASCHE, HIS WIFE.

*Telegraph Companies: trespass; cutting trees.   Evidence: damages; value before and after; taking case from jury; assuming truth of plaintiff's testimony.*

In passing upon the question of taking a case from the jury, and upon the sufficiency of evidence, the truth of the plaintiff's evidence is to be assumed.                                    p. 129

In an action against a telegraph company for injury to the plaintiff's trees, evidence that one who was shown to be one of the defendant's foremen, having charge of workmen on the line, was seen in the vicinity about the time of the injury complained of, with other linemen, chopping and trimming trees, should be allowed to go to the jury.                        p. 130

It is only when a servant abandons his duty and willfully becomes a wrongdoer that the master is exempt from responsibility for the servant's wrongful acts.                    p. 130

Witnesses who had personal knowledge of land and its value before trees on it were cut or destroyed, and its value afterwards, may testify as to the value before and after the cutting of the trees.                                          p. 131

*Decided January 18th, 1917.*

Appeal from the Circuit Court for Washington County. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Frank G. Wagaman* and *Albert T. Benedict*, submitted a brief for the appellant.

*Stephen W. Leitch* (with whom was *McCauley & Humrichhouse* on a brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellees sued the appellant company to recover the loss sustained by them resulting from the entry of the defendant upon their lands and cutting certain shade and ornamental trees.

The trial resulted in a verdict and judgment for the plaintiffs and the defendant has taken an appeal from that judgment.

There are five exceptions found in the record, four to the ruling of the Court on the evidence and one upon the prayers.

The plaintiffs offered two prayers both of which were granted. The defendant offered four, one was granted and the others were rejected. The first rejected prayer of the defendant asked that the case be taken from the jury because of the want of legally sufficient evidence "to show that the defendant by its servant or agents committed the wrong complained of." This prayer was properly rejected.

The property of the plaintiffs which is used and occupied by them in the summer season for the accommodation of boarders, is located in the mountains of Washington County, near Buena Vista, upon the line of the Western Maryland Railroad; and upon the right of way of that company are the poles and wires of the defendant company.

In the winter of 1914-1915 the plaintiffs' property was occupied and cared for by Bernard Janson, the owner of the adjoining property.

Bernard Bayer, a witness for the plaintiffs testified that in that winter he worked for Janson and that about the first of March, 1915, he saw "four men dressed as telegraph linemen with climbers and axes come along the plaintiffs' property" and cut four trees thereon, that when he saw the men cutting the trees he ran and called Mr. Janson who at the

time was upon his own property, and he came over to the plaintiffs' property and "had conversation with one of them about the cutting down of the trees." The witness did not know any of the men he saw upon the plaintiffs' property on the occasion mentioned.

At the trial of the case the defendant produced four men who were, as they said, charged with the duty of "trimming the line and putting glass on same between Hancock and Union Bridge" at the time of the alleged trespass. Of these men Bayer recognized Lester C. Uhler as one of those he had seen upon the property of the plaintiffs, and the one in charge of the men that were cutting the trees on that occasion. He, however, did not recognize the others.

Bernard Janson, for whom Bayer worked, testified that he had charge of the plaintiffs' property in the winter of 1914–1915 and a part of that winter lived in the plaintiffs' house. As he expresses it, " sometimes I was living in my own house and sometimes in Mrs. Rache's. I was looking after Mr. Rasche's property and the boy Bernard Bayer, who has testified, was working for me * * * I remember when these trees were cut * * *. I was present in my house that morning and Bernard Bayer came over for me, and I looked and saw that the men were just cutting a locust tree; I saw about four men there; they were dressed with spikes on; just like a telegraph operator. I had conversation with the men." He too recognized Uhler as being one of those upon the property of the plaintiffs on the day the trees were cut, but like Bayer could not recognize the others as being present with Uhler on that occasion.

Lester C. Uhler when placed upon the stand by the plaintiffs testified that he was employed by the defendant company as its line foreman with an office at Hagerstown; that his "duties consisted of the superintendence of the workmen engaged in the repair, maintenance and rebuilding of the company's lines in this district." He further testified that the defendant and the Western Maryland Railroad Company both have telegraph lines on the right of way of the Western

Maryland Railroad Company, adjoining the property of the plaintiffs; that the wires of both lines are strung on the same set of poles and cross-arms; that the telegraph poles in front of plaintiffs' property were owned by the defendant company; that the lines and poles are maintained by it and all work on the equipment, such as repairs, maintenance and rebuilding is done under the direction and control of the defendant company.

It is true that he denied being on the premises of the plaintiffs at any time in charge of men while the trees thereon were being trimmed or cut.

It was also denied by these who were at such time employed by the defendant company, charged with the duty of trimming the trees along the line of its poles and wires, that they cut the trees on the property of the plaintiffs; but notwithstanding their denials the evidence of the plaintiffs, which we must assume to be true, in deciding the question presented, was sufficient to carry the case to the jury as tending to show that the defendant by its servants or agents committed the wrong complained of.

By the third prayer of the defendant the Court was asked to submit to the jury for its finding, whether or not such trees were cut by the servants and agents of the defendant while in the performance of their duty as such servants and agents.

It is admitted by the defendant that it had men employed at the time of the wrong complained of, whose duty it was to trim the trees along the line of their poles and wires, but these men deny that they or any of them, cut any trees upon the premises of the plaintiffs, either upon their own responsibility or while acting as servants or agents of the defendant. In fact, they disclaim any and all knowledge of the alleged trespass.

The only evidence in this case as to who cut the trees is the evidence of the plaintiffs, and that evidence is to the effect that they were cut by men dressed as telegraph linemen with climbers and axes, acting under the direction and

superintendence of Uhler, who, by his own testimony is shown to be an employee of the defendant company, whose duties involve the direction and superintendence of line workmen.

There is no evidence found in the record from which it may be inferred that the trees were cut by them while acting otherwise than as servants and agents of the defendant company. It may or may not have been necessary to cut the trees to prevent their interference with the wires of the defendant company, but this fact can not affect the question under consideration when considered in connection with the positive evidence of the plaintiffs, that men with all the paraphenalia of linemen, like those seen at other times doing similar work for the defendant company, came upon the property of the plaintiffs and cut trees thereon, under the direction of one who admits that he is the line foreman of the defendant company and whose duty it is to direct and superintend such work. As shown by the evidence of the plaintiffs, the men referred to by them as being upon the premises of the plaintiffs at the time of the alleged trespass were there in the furtherance of the defendant's business and acting within the scope of their employment, and consequently their acts, though wrongful or negligent, are to be treated as the act of the defendant company. It is only when the servant abandons his duty and wilfully becomes a wrongdoer that the master is exempt from all responsibility for such wrongful act. (*Consolidated R. R. Co.* v. *Pierce,* 89 Md. 503.)

There is nothing in the evidence to show that these men ever abandoned their duty to the company, but on the contrary the evidence of the plaintiffs, which is the only evidence on the subject, is that the men referred to acted under the direction of the defendant line foreman throughout the entire time they were upon the premises of the plaintiff.

The Court we think acted properly, in its refusal to submit this question to the jury, and it committed no error, in our opinion, in rejecting the defendant's fourth prayer.

The plaintiffs' first prayer properly states the law of this case, and we need not discuss the contention of the defendant in relation thereto, in view of what we have said as to the Court's ruling upon the defendant's third prayer. The ruling of the Court upon the plaintiffs' second prayer is unquestionably correct, as it properly states the measure of damages in cases of this character.

All four of the exceptions to the rulings of the Court upon the evidence relate to the damage alleged to have been sustained by the plaintiffs.

One of the objections urged against the admissibility of the evidence admitted under these exceptions is that the witnesses (Ruth and Keiffer) were not qualified to speak as to the value of the plaintiffs' property.

Ruth testified that he had lived near the plaintiffs' property for more than thirty years and at one time owned it; that he was familiar with the property around there and with the prices at which property in that neighborhood had been selling for the last fifteen or twenty years; that he is "pretty well acquainted with the prices of property around there generally."

Keiffer testified that he now lives on his own property, in a house built by him about twenty-one years ago, which is located one-fourth of a mile from the property of the plaintiffs. That he has been living in that community almost all his life, and is acquainted with the plaintiffs' property and the value of real estate in that neighborhood; that he knows "what properties have brought in the last fifteen years" and knows "what property would bring up there now."

Upon this testimony there can be no doubt as to the qualification of these witnesses to speak of the value of the plaintiffs' property. (*M. C. C. of Baltimore* v. *Smith,* 80 Md. 458; *Baltimore City* v. *Hurlock,* 113 Md. 674.)

The objection is also made to the admission of such testimony, that the witnesses (Ruth and Keiffer) were permitted to give their opinion of the amount of the damages sustained by the plaintiffs, which was the question the jury was required to pass upon.

The questions to which the exceptions have been taken when examined do not warrant this conclusion. The witness Ruth was first asked if he knew the value of the property before the trees were cut and upon his answering that he did he was then asked its value. It was to this question that the first exception was taken, and upon his answering this question he was asked the value of the property after the trees were cut. In response to which he said "well it damaged the property, I suppose, between three hundred and four hundred dollars." This answer was not responsive to the question, but no exception was taken to it. The plaintiffs' counsel however, appreciating that it was not responsive, repeated his question by asking him, "Mr. Ruth, tell us the value of the property immediately after the cutting of those trees? What was the value then? You say it was worth between $3,300 and $3,500 before?"

To this question the third exception was taken. His answer to the question was "say $3,000, it may be worth more than that and maybe not, that is my opinion."

The fourth exception was to a question similar to the one involved in the third exception. Mr. Keiffer had already given his estimate of the value of the property before the trees were cut, without objection, and he was permitted to answer the question giving his estimate of the value of the property after the alleged trespass.

The plaintiffs were entitled to show the depreciation in the value of their property resulting from the trespass, by showing its value before and its value thereafter. (*Western Union Tel. Co.* v. *Ring,* 102 Md. 677; *Sedgwick on Damages,* 9th Ed., sec. 933.)

This was the practical effect of the above stated questions and answers, and we find no error in the rulings of the Court in any of these exceptions.

We will therefore affirm the judgment of the Court below.

*Judgment affirmed, with costs to the appellee.*