(Decided 15th July, 1879.)

---

ELLEN MAHONEY and JOHN C. MAHONEY *vs.* JAMES MACKUBIN, Trustee, and WILLIAM PARKS, Purchaser.

*Exceptions to Trustee's Sale—Acceptance of interest on mortgage debt after Default, no waiver by implication of the Default—Extension of time for payment—No such Extension effected by propositions held under advisement by the Mortgagee subject to conditions not complied with—A demand as a condition of Extension that taxes due but not collectable by distress, be paid, not an unreasonable one—Sufficiency of description of Property in Advertisement of Sale—Effect of weather upon Postponement of Sale—Inadequacy of Price— Conduct of Trustee in making Sale.*

M. being trustee under a decree of the Circuit Court of Baltimore City, and as such trustee having funds in his hands for investment, invested the same under the direction of said Court in a mortgage on property in Baltimore County. A note was given for the principal of said loan, and separate notes for the semi-annual instalments of interest to accrue during the period for which the principal was loaned. The mortgage was conditioned for the payment of said

notes, as they severally matured, and provided for a sale of the mortgaged property by the mortgagee as trustee, upon any default in the conditions of the mortgage. Just before the principal of the mortgage debt fell due, the mortgagor sold the mortgaged property to the wife of M., subject to said mortgage; and to secure an extension for another year, M. endorsed a written guaranty of the principal sum, (or balance thereof,) and the interest semi-annually, stating in said guaranty that it was for the purpose of securing an extension for one year from maturity. Further indulgence was given from time to time until the 11th of February, 1878, when the principal not having been paid, the trustee in March, 1878, advertised the property for sale, and sold the same pursuant to said notice, and reported the sale to the Court. On exceptions to said sale, it was HELD:

1st. That an acceptance by the trustee after the 11th of February, 1878, of the interest which fell due on that day could not by implication be held to extend the time for the payment of the principal.

2nd. That such extension was not effected by certain interviews between the trustee and M., not culminating in an agreement for extension.

In the first of said interviews the trustee demanded the payment of five thousand dollars of the principal to make the claim abundantly secure. Being importuned to withdraw that demand and indulge at least until the fall, he promised to see his *cestuis que trust*, and see what could be done, provided M. would at once go and have a certain policy of insurance assigned as collateral security, and would also pay the taxes unpaid and get receipt for the same deed, send him the written evidence of such payment and of such assignment by the following Monday morning. These demands were not complied with, and on the Monday morning, the trustee saw in the newspapers that M. had made an assignment for the benefit of his creditors, which fact had been concealed from him in the interviews referred to, notwithstanding the conveyance was made the day before the first interview. HELD:

1st. That the trustee was not only not bound by anything he had said to stay proceedings, but was fully justified in proceeding at once to advertise the property for sale.

2nd. That the fact that the taxes of which payment was required although due, could not have been collected by distress at that time, did not affect the right of the trustee to demand their payment, as one of the conditions of the extension.

Mahoney *vs.* Mackubin, Trustee, *et al.*

The mortgaged property consisted of three parcels, all of which were advertised as adjoining, and each was not only specially described by reference to Liber and page of the Land Records of Baltimore County, but the property was described as the former residence of Mr. A., a prominent citizen, and also as adjoining the famous H. estate of Mr. J. M., and as being one-and-a-half miles west of C. station on the N. C. Railroad in the limestone valley of the Beaver dams. HELD:

That the description was more than usually full, and sufficient to give notice to any one wishing to buy such property where it was, and enable him to find it for examination.

There had been rain in the morning but it was fair at the time of the sale. It cleared off before ten o'clock a. m. And the sale took place at one o'clock p. m. One of the witnesses stated that he had intended to go out and look at the property early that morning, but was prevented by the weather. It was not shown that he was wholly prevented from bidding by this fact, but that he was prevented by other considerations. HELD:

That taking all the proof together, the trustee did not appear to be reprehensible for not postponing the sale till another day.

Upon consideration of the facts touching the manner in which the sale was conducted, and the sufficiency of time allowed for the bidding, it was HELD:

That there was no objection to the sale in this respect.

It was also, upon a review of the testimony relating to the value of the property, and the price for which it was sold, HELD:

1st. That there was no ground for disturbing the sale upon the ground of inadequacy of price.

2nd. That there was nothing in the case to indicate any dereliction on the part of the trustee in regard to his duty to use his best efforts to effect a sale for the best possible price. And the price obtained for the property, which was very nearly the appraised value of it for the purpose of taxation, would not warrant the Court in attributing to him a failure to exercise reasonable discretion and reasonable endeavors to do justice by all his *cestuis qui trust.*

APPEAL from the Circuit Court for Baltimore County, in Equity.

Mahoney *vs.* Mackubin, Trustee, *et al.*

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY, and IRVING, J.

*Albert Ritchie,* for the appellants.

*James Mackubin,* for the trustee.

*Bernard Carter,* for the purchaser.

IRVING, J., delivered the opinion of the Court.

From the record in this cause we learn that the appellee, James Mackubin, is a trustee, under a decree of the Circuit Court of Baltimore City, and as such trustee had funds in his hands for investment, which, under the direction of the Court, were loaned, to the extent of $15,864.36, to John F. Shipley, who gave his note therefor, payable five years after date, with interest payable semi-annually, and for the interest gave notes maturing every six months during the term of the loan. To secure the principal and interest, according to the said terms of payment, the said Shipley executed a mortgage to the said James Mackubin, trustee, dated the eleventh day of February, 1870, on certain property in Baltimore County, conditioned for the payment of said interest notes as they fell due, and the principal, when it should become due, and upon any default, in any of the conditions of the mortgage, providing for a sale of the property by the said mortgagee as trustee. Just before the principal of said mortgage fell due, Shipley, the mortgagor, sold the property mortgaged to Ellen Mahoney, wife of John C. Mahoney, also one of the appellants, subject to the said mortgage, and to secure an extension for another year John C. Mahoney, husband of the grantee, endorsed a written guaranty of the payment of the principal sum, or balance thereof, (which was $15,000.00,) and the interest semi-annually, stating in said

guaranty that it was for "the purpose of securing exten-
sion for one year from maturity." Further indulgence
was given from time to time, it appears, until the 11th of
February, 1878, when the principal not having been paid,
in March, 1878, the trustee advertised the property for
sale, and afterwards, in pursuance of the notice, did sell
on the 11th of April, 1878, and reported his sale to the
Court. Exceptions to the ratification were filed, testimony
was taken, and the Court having overruled the exceptions
and ratified the sale and report, appeal has been taken to
this Court.

The exceptions relied on in this Court for setting aside
the sale are five in number. 1. Because there was no
default to justify sale. 2. Because the property was insuf-
ficiently described. 3. Because the weather was not fit
for sale to be made. 4. Because sale was improperly con-
ducted. 5. Because the property sold for a grossly inade-
quate price. We will consider them in the order pre-
sented. First. According to the terms of the extension
secured by the guaranty of John C. Mahoney on the 30th
of January, 1875, the principal fell due on the 11th of Feb-
ruary, 1876, and unless, by arrangement with the parties in
interest, such extension was agreed upon as would have
entitled the appellants to the aid of a Court of equity to
enjoin the appellee, Mackubin, from making the sale when
he did make it, the objection, that there was no default,
cannot avail as against the sale made and reported. We
can find no proof in the record establishing any such
arrangement and creating any such equitable estoppel
as is relied on by the appellants. In this inquiry it must
be remembered that the appellee, Mackubin, occupied a
two-fold fiduciary relation. As mortgagee he was the
holder of funds invested, by the Court's order, in that
mortgage, for the taking of which he was the Court's
agent, and held the same as trustee for others whose
interests he could not compromise legitimately, without
the assent of the *cestuis que trust,* or of the Court. As

trustee, for the sale of the property appointed by the mortgage, his only duty was to execute the trust as to the sale with fidelity to both mortgagor and the *cestuis que trust* of the fund secured by the mortgage.

The only evidence from which an agreement to extend the time for payment of principal, is sought to be deduced, is the fact that the interest which fell due on the 11th of February, 1878, was received after it had been past due some days, and that there were some interviews between Mr. Mackubin and John C. Mahoney, one of the appellants, respecting such extension.   The interest was due on the 11th of February, 1878, and the note for it went to protest but was afterwards paid.   It is too clear for argument that the acceptance of what was due for interest cannot, by implication, be held to extend the time for the payment of the principal.   The interviews between Mr Mackubin and Mr. Mahoney did not culminate in agreement for extension, and no express agreement is insisted upon ; but it is urged that what was said in those conversations by Mr. Mackubin amounted to a waiver of the default made. We do not so read the proof.   In the first interview Mr. Mackubin demanded the payment of five thousand dollars of the principal, to make the claim abundantly secure, of which, by reason of the great shrinkage in real estate values, he had grown distrustful.   Being importuned to withdraw that demand and indulge at least until the fall, Mr. Mackubin promised to see his *cestuis que trust* and see what could be done, provided Mr. Mahoney would at once go and have a certain policy of insurance assigned as collateral security, and would also pay the taxes unpaid, and get receipts for the same and send him the written evidence of such payment and such assignment, by the following Monday morning.   In the subsequent interviews these demands were not withdrawn.   Mr. Mahoney admits these demands and that they were not complied with by the time named by Mr. Mackubin ; but he says that after having these talks he "rested easy."

We do not think he was warranted in making himself easy, in view of these talks, without complying with the requirements of Mr. Mackubin, which were conditions precedent even to his seeing his *cestuis que trust,* the Gaithers, on the subject, to see if on those terms they would consent to the extension. He could not fail to understand from what was said that Mr. Mackubin did not feel warranted to give an extension of the time, without the consent of the Gaithers, the beneficiaries of the fund, and therefore he could not reasonably understand the default to be waived. Receiving no receipts for taxes, and no evidence of the assignment of the policy of insurance on Monday as he required; and seeing, as he did, in the newspapers on Monday, that Mr. Mahoney had made an assignment for the benefit of his creditors, which fact had been concealed from him in the interviews referred to, notwithstanding the conveyance was made the day before the first interview; and inasmuch as such assignment cast discredit upon the value of Mahoney's guaranty, upon the faith of which previous extension had been granted, and diminished his security, or at least put the guaranty in jeopardy, we think Mr. Mackubin was not only not bound by anything he had said, to stay proceedings, but was fully justified in proceeding at once to advertise the property. Fidelity to his trusts and the beneficiaries under them required him to take steps which would make all his securities available. Whether he would be entitled to anything from Mahoney's trustee could not be ascertained till the mortgaged premises were sold, and it was known whether a balance would be left for his estate to meet by reason of his guaranty.

The view we take of the matter makes it immaterial whether the taxes which were required to be paid were technically demandable or not, about which the counsel for appellants have argued so ably, that as they could not be collected by distress at that time, they were not techni-

cally due.    They were said to be due, and though they might not be collected by distraint, they soon would be, and to prevent that being done may have been one of the reasons for requiring their payment, before proposals for extension would be entertained.    Whether collectable by compulsion at that time made no difference, payment by a particular day was demanded and was not made.

2.  The objection as to insufficiency of description of the property in the advertisements is equally untenable.    The property consisted of three parcels, all of which were advertised as adjoining, and each not only specially described by reference to Liber and page of the land records of Baltimore County, but the property was described as the former residence of Mr. Albert, a prominent citizen, and also as adjoining the famous "Hayfields estate" of Mr. John Merryman, and as being one and a half miles west of Cockeysville station on the Northern Central Railroad, in the limestone valley of the Beaver dams.    The description seems to us more than usually full, and is certainly sufficiently so to give notice to any one wishing to buy such property, where it was, and enable him to find it for examination.

3.  The objection on the score of weather is also without foundation, as a reason for disturbing the sale.    All agree that there had been rain in the morning, and all agree it was fair at the time of sale.    The sale took place about one o'clock, p. m., and Mr. O'Ferral, exceptants' witness, says it cleared off before 10 o'clock.    He had intended to go out and look at the property early that morning, but was prevented by the weather and did not go out till 12 o'clock.    He had had full opportunity of going before, and if he did not, it was his own fault.    The objection would be more plausible if he was shown to have been wholly prevented from bidding by this fact; but it appears that he was prevented by other considerations.    Taking all the proof together we cannot see that the trustee is reprehensible for not postponing the sale till another day.

4. The only objection to the mode of conducting the sale is, that sufficient time was not given for the bidders to bid; that it was too much hurried up, and the property was struck off too quickly. It is unnecessary to analyze the testimony on this point, as we do not think the proof justifies any interference with the sale on that ground. None of the persons who participated in the bidding, or seem to have had any idea of bidding, regarded the action of the auctioneer as premature, or the suggestions of the trustee as calculated to injure the sale; and unless there was good ground to so suppose, the Court was right in overruling this objection also.

5. The last objection is, that the price obtained was wholly inadequate. It is very clear, that the property has not brought as much money as it did bring a few years before, and as other property of like character had brought in the neighborhood some years before. But it is also proved, that great depreciation in property values, and especially of real estate, had taken place after appellant's purchase, so as to make it difficult to put a safe estimate on the real value of this property. A large real estate owner, in the immediate vicinity of this property, had advised Mr. Mackubin to require a reduction of the debt to make sure of his security being adequate; and the same person, although he was a man of abundant means, did not think there was prospect of enough speculation to join the purchaser in the purchase. The testimony as to the value of the property, in excess of what it has brought under the hammer, is purely speculative, and is not sustained by the comparative prices brought by other property lately before sold in that region. It may be the property is worth more money, even on a cash sale as this is, and that Mrs. Mahoney is a great sufferer by her purchase, subject to this mortgage, is abundantly clear; but we do not see, in this sale, which is very nearly for the appraised value of the property, for the purpose of taxation, good

ground to disturb it. This Court has repeatedly decided that mere inadequacy of price is not sufficient to set aside a sale. It may be evidence of fraud or misconduct on the part of the trustee, and in connection with other evidence may be regarded as a reason for setting aside a sale. *Glenn vs Clapp,* 11 *G. & J.,* 1, and *Hubbard and Wife vs. Jarrell,* 23 *Md.,* 83; *Cohen vs. Wagner,* 9 *Gill,* 236 ; *Johnson vs. Dorsey,* 7 *Gill,* 269.

Every trust deed is upon the condition implied, that the trustee will obtain the best price possible, and will make reasonable efforts to do so ; and that he will act with reasonable judgment and discretion. We have seen nothing in the case to indicate any dereliction on the part of the trustee in this regard, and certainly the price obtained will not warrant us in attributing to him a failure to exercise reasonable discretion, and reasonable endeavors to do justice by all his *cestuis que trust.* It is worthy of notice, that the mortgagee nor the *cestuis que trust* of the fund in this case were the purchasers of the property, as was the case in the case of *Hubbard and Wife vs. Jarrell,* 23 *Md.,* 66, and *Horsey vs. Hough,* 38 *Md ,* 130, cited by appellants' counsel. In those cases the Court said that fact subjects them to a stricter construction of the rules, and makes the inadequacy of price a weightier reason for interfering in behalf of the mortgagor. Here a wholly disinterested party is the purchaser, who has paid his money, and is also in Court defending his purchase. His bid was fairly made, in open market, where the trustee had brought the property, with the exercise of proper discretion, and after proper notice, under the hammer, and there seems to be no sufficient reason for depriving him of his purchase, or subjecting him to a new competition. The property may have enhanced in value since the sale, and if so, he is entitled to that benefit, unless he is responsible, in some way, for the failure of the former sale to bring a proper price, or there was some misconduct, in or about the same, of the

trustee which makes it unfair to ratify it. This Court in the case of *Johnson vs. Dorsey,* 7 *Gill,* 287, adopt the language of the Vice-Chancellor in *Woodhull vs. Osborne,* 2 *Edwards' Rep.,* 616, and say, that, "where a stranger or third person becomes the purchaser in good faith, something more than a mere offer of a higher price must appear to induce a re-sale, such as fraud or misconduct of the master or other person, having control of the sale, or surprise on the party interested, or his having been mislead as to the time and place of sale; and when circumstances of the latter description are relied on the party must show they proceeded from, or were caused by the purchaser, or some person connected with or having the management of the sale." In the case of *Johnson vs. Dorsey* the Court reversed an order setting aside a sale where it was alleged the property had brought very little over half price, for the reason just quoted amongst others. None of the circumstances enumerated by the Vice-Chancellor in the case just cited are found here. No misconduct on the part of the trustee has been established, and none on the part of the purchaser has been alleged. There is no proof that any one was prepared to make a larger cash offer. One witness has said he was authorized to offer a trade, in which the property was to be estimated higher, but whether the property offered in exchange would have netted more money is wholly uncertain and speculative. The opinions of witnesses vary somewhat, as to the real value of the property, but those opinions are mere speculations, and there is no sufficient warrant from the evidence to expect, with any certainty, a larger price, if we were otherwise justified in ordering a new sale. Fully concurring with the Circuit Court in regarding the exceptions insufficient to avoid the sale, we shall affirm the order appealed from.

*Order affirmed with costs,*
*and cause remanded.*

(Decided 15th July, 1879.)