# BALTIMORE BELT RAILROAD COMPANY AND THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* GEORGE WILLIAM SATTLER.*

*Nuisances—Damage to Property Adjacent to an Open Railway Cut Between Tunnels—Evidence—Measure of Damages—Instructions to the Jury—Prayer Not Ruled Upon in First Appeal.*

In an action to recover for injury to plaintiff's property caused by a nuisance the Court should instruct the jury in respect of what elements and within what limits damages may be estimated; and it is for the jury to determine whether the injury was the direct consequence of the acts of the defendant complained of, and the extent of the damage thereby caused.

In such action the interference with the reasonable and comfortable enjoyment of plaintiff's property and any material injury thereto caused by the nuisance, loss of sales or rentals, may be proper items of damages for which recovery may be had. In order to prove the extent of loss of sales or rentals the plaintiff may be permitted to prove the market value of his property before and after the injury complained of.

An expert witness in such action may give his opinion as to the value of the property before and after the creation of the nuisance, and he may state to the jury the reasons upon which his opinion is based in order that they may judge of the value of his testimony, but he cannot testify either as to the fact or the amount of the damage resulting from the nuisance.

Plaintiff owned two lots of ground used as a garden adjacent to his residence near the open cut of defendant railway company between two tunnels, and it was held on a former appeal that he was entitled to recover damages for the injury caused by the smoke, gases, cinders and vibration resulting from the operation of the railroad, which had not been constructed in conformity with a municipal ordinance. The action was for damages to plaintiff's use and enjoyment of the property accruing from the time the road was built to the time the action was instituted. Plaintiff testified that burning cinders from the railway had set on fire his fence and grass, and that his stable was burned by a fire so started, also that the fruit and trees were injured by the cinders and that the noise, vapors, &c., were destructive to the reasonable enjoyment of his prop-

---

*An elaborate note relating to the effect of legislative authority upon liability for private nuisance is appended to the case of *Louisville, etc., Co.*, v. *Lellyett*, L. R. A. New Series, vol. i, p. i.

erty. *Held*, that the plaintiff is not entitled to recover exemplary damages, but only such sum as will be a compensation for the interference with the reasonable enjoyment of his property, and also for any material injury thereto, and that the extent of these damages was a question for the jury under instruction from the Court.

*Held*, further, that evidence is admissible of facts from which the jury might infer that the burning of plaintiff's stable was caused by cinders from defendants' engines.

*Held*, further, that witnesses acquainted with the property may testify as to the injurious effect of the smoke and gases from the engines and as to their effect upon a garden where fruits and vegetables are raised.

*Held*, further, that testimony as to the condition of plaintiff's property after the suit was brought is irrelevant, as plaintiff's claim was for the damages caused prior thereto.

*Held*, further, that a prayer is erroneous which instructs the jury that if they find for the plaintiff they may allow him such damages as they may find from the evidence to have been caused to his interest in the premises by reason of the said smoke, gas, vapors, noise and vibration from the time said effect was first produced down to the institution of the suit. Such prayer is too indefinite since it fails to direct the jury as to the precise elements of damage for which the plaintiff was entitled to recover; and since there is no evidence of any permanent diminution in the value of plaintiff's property by reason of the acts complained of, the jury should be instructed that he is not entitled to damages for diminution in the market value of his lots.

Upon a motion for reargument *held*, that

Where a judgment is reversed on appeal solely for errors of the trial Court in the admission of certain evidence, and no reference is made to an instruction granted by the trial Court, then upon a retrial that instruction is not necessarily the law of the case, and upon a second appeal the judgment may be reversed if there be error in the granting of such instruction.

Appeal from the Court of Common Pleas (SHARP, J.), where there was a judgment for the plaintiff for $5,000.

*Defendant's 2nd Prayer.*—That there has been no evidence introduced legally sufficient to prove that there was any permanent diminution in the value of plaintiff's lot by running of defendants' train, or that the plaintiff suffered any loss or damage from the alleged diminution in the value of his lots between the time of the construction of defendants' railroad and the time of bringing this suit and therefore the plaintiff is

not entitled to recover any damages for diminution in the market value of his lot. (*Refused.*)

*Defendants' 3rd Prayer.*—If the jury believe from the evidence that during the time between the year 1895, when the defendant's railroad was built and October 8th, 1902, when this suit was instituted, the plaintiff was interfered with in the enjoyment of the lot fronting one hundred (100) feet on Charles street by the noise and vibration, smoke and vapors resulting from the operation of defendants' railroad and that the value of said lot was, during said time, diminished in value; but shall also find that said injury to the plaintiff's use of their said land was caused by the temporary drawing of said defendants' trains by engines using steam which mode of drawing said trains has since entirely ceased, then the jury cannot in their verdict give any damages for the lessening of the market value of said plaintiff's lot. (*Refused.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*W. Irvine Cross* and *Duncan K. Brent*, for the appellants.

*Alfred S. Niles* and *Oscar Wolff*, for the appellee.

BURKE, J., delivered the opinion of the Court.

1. This is an action of *trespass on the case* brought by George William Sattler against the Baltimore Belt Railroad Company and the Baltimore and Ohio Railroad Company to recover damages for certain alleged acts of the defendants. The plaintiff is the owner of two unimproved lots of ground in the city of Baltimore on the east side of Charles street, one of which has a frontage of fifty feet, and the other of one hundred feet on said street, and each has a depth of about 180 feet to an alley. The Baltimore Belt Railroad Company runs near to the north of said last-mentioned lot, and about one hundred and fifty feet north of the first-mentioned lot. The Baltimore and Ohio Railroad Company runs engines and trains of cars

over the tracks of the Baltimore Belt Railroad Company under an arrangement between it and the latter company. The alleged tort, which constitutes the ground of the action, is stated in the *narr.* in the following words: "That from the engines which are run over the said railroad by the defendants aforesaid, and have been for a long time past, discharged large quantities of smoke and offensive unwholesome vapors upon said plaintiff's land, and from the engines and cars so run by the defendants aforesaid, there is caused to come upon the plaintiff's said land a large amount of noise and vibration." And the injury which is alleged to have resulted from said unlawful acts is stated as follows: "That by reason of said discharge of smoke and offensive and unwholesome vapors upon plaintiff's said land, and by reason of the causing of said noise and vibration to come as aforesaid upon the plaintiff's said land, the plaintiff's said land is rendered far less desirable for dwelling, or building purposes than it otherwise would be, the plaintiff is deprived of the profits and advantages that would reasonably inure to him from the development and improvement of his said property, and the value thereof is seriously impaired."

In the case of the *Belt Railroad Company* v. *Sattler*, 100 Md. 306 it was decided that the plaintiff would have a right to recover under the declaration in this case; provided the allegations thereof were supported by the proof. That case was reversed for errors found to have been committed by the Court in the admission of certain testimony, and a new trial was awarded. It was retired in the Court of Common Pleas, and resulted in a judgment for the plaintiff against the defendants from which judgment they have prosecuted this appeal. The evidence shows that between the two lots mentioned in the declaration there is a lot improved by a dwelling house in which the plaintiff resides, but that the plaintiff does not own this lot, and that the adjacent lots on the north and south are used in connection therewith as a garden and lawn. During the trial the defendants reserved twenty-one exceptions upon questions of evidence,—and two to the refusal of the Court to

strike out certain testimony.    At the conclusion of the case the plaintiff offered one prayer which was granted, and the defendants offered three prayers, and made seven motions to strike out testimony.    The Court refused the defendants' prayers, and also their third, fourth and fifth motions.    To the granting of the plaintiff's prayer, and the refusal of their prayers, and their third, fourth and fifth motions, the defendants excepted. and this constitutes the twenty-fourth exception.

, 2.  While the exceptions are numerous, they present little difficulty, and may be disposed of by application thereto of well recognized legal principles.    In order to recover it was incumbent upon the plaintiff to prove, first, his ownership, or possession of the land ; secondly, the injurious acts alleged to have been done by the defendants, or one of them, and thirdly, the damages directly caused to his interest in the lots by the wrongs complained of.    The plaintiff's title to the lots was admitted by the defendants.    It was also admitted that the Baltimore Belt Railroad Company is operated by the Baltimore & Ohio Railroad Company, and has been so operated since August 4th, 1895;  that the tracks of the Baltimore Belt Railroad Company run immediately north of the plaintiff's property, and are used by the Baltimore & Ohio Railroad Company in running its trains between Baltimore and Philadelphia, and have been so used since August 4th, 1895.  The plaintiff then offered evidence by a number of witnesses tending to prove the wrongful acts on the part of the defendants alleged in the *narr*, and the injurious effects of said acts upon his property.

Upon this branch of the case, it becomes important in disposing of some of the questions raised to refer to the testimony of the plaintiff.    As to the condition of the property before the injury complained of, he testified that the lots mentioned in the declaration were used as pleasure grounds, or garden, and contained shade trees, flowers, and shrubs, and was generally used as a gentleman's garden ; that he made all the improvements upon the property; that he graded it; that he used

the lots as a pleasure ground, as a place to get a little fresh air ; also for having some fruit there ; that he had some of the finest trees there, flowers, and shrubs, and imported trees from Germany and other places ; that there are two tracks in the open cut of the Belt Railroad immediately north of his property over which practically all of the trains between Baltimore and Philadelphia and New York run, that there are more than one hundred and twenty trains that pass that point daily, and that they are passing continually day and night. As to the effects upon said lots due to the running of the trains, he testified that there was always a quantity of thick smoke with gas and cinders thrown over his place ; that the smoke ruined all of his fruit and was so bad that he could not eat the fruit without washing it ; that this takes the pleasure away ; that the cinders are falling all the time, burning cinders ; that the brush on the road was set on fire, and in that way his fence was set on fire several times ; and that his stable was burned, that is, the fire commenced in the grass, or old hay, and the cinders and nothing else did it ; that the gas smells very strongly at times, and occasionally there is none, according to how the wind blows ; that the noise is so loud that you can scarcely understand each other when you are talking ; that the vibration is frequently felt about two minutes before the train passes his place, that the two tunnels at the end of the open cut carry the sound farther, and that the smoke and gas come out of the tunnels ; that the vibration and noise are worse in the house than out doors ; that the windows clatter and shake and the shutters make a noise ; often it seems like someone was breaking into the house ; that the gas is very disagreeable. It is also important to note that all the testimony in support of the plaintiff's case was limited to injury and damage to the time between August 4th, 1895, when the operation of the road began, and the 8th, day of October, 1902, when the suit was brought, and by the prayer granted at the instance of the plaintiff, the jury were instructed to limit their finding as to damages to the last named date. The injury was, therefore, treated as a temporary, and not

a permanent one, and the case was tried on behalf of the plaintiff upon this conception of the nature of the injury.

The main points of controversy turn upon the question of the proof, and the measure of damages. Many of the numerous exceptions rests upon identical grounds of objection. There are certain principles applicable to this branch of the case which must be conceded. *First*, there being no element in the case which would authorize the jury to visit punishment upon the defendant, the damages must be limited to compensation for injury done. In all cases where the facts and circumstances forbid the finding of vindictive damages, the jury must be instructed to allow, and they can only award to the plaintiff, such sum as would compensate, or satisfy him for the injury actually received by him from the defendant. This should be precisely commensurate with the injury ; nothing more, nor less. In *Sutherland on Damages*, 2nd ed., sec. 12, the rule is thus stated : "The universal and cardinal principle is that the person injured shall receive a compensation commensurate with his loss, or injury, and no more ; and it is the right of the person who is bound to pay this compensation not to be compelled to pay more, except the costs." This rule has the support of uniform adjudications in this Court. In the case of the *Redemptorists* v. *Wenig*, 79 Md. 355, ROBINSON, C. J., in delivering the opinion of the Court, said : "In the absence of such facts and circumstances as will entitle one to exemplary damages, the general principle upon which compensation for injuries to real property is given is that the plaintiff shall be reimbursed to the extent of his injury."

*Secondly*, the question as to whether damages were suffered by the plaintiff as a direct consequence of the acts complained of, and the extent of those damages were questions for the jury, under proper directions by the Court. This Court in the case of *Baltimore & Ohio Railroad* v. *Carr*, 71 Md. 133, held that the rule by which damages are to be estimated is, as a general principle, a question of law to be decided by the Court ; that is to say, the Court must decide, and instruct the jury, in respect of what elements, and within what limits,

damages may be estimated in the particular action. *Harker et al.* v. *Dement*, 9 Gill, 7 ; *Hadley* v. *Baxendale*, 9 Exch. 341, 354. Indeed, it is of the utmost importance that juries should be explicitly instructed as to the rules by which they are to be governed in estimating damages ; for as was justly observed by the Court in *Hadley* v. *Baxendale, supru,* "if the jury are left without a definite rule to· guide them, it would, in most cases, manifestly lead to the greatest injustice."

*Thirdly,* the medium by which the jury are to be informed as to the fact of damage, and its extent, is the testimony of witnesses offered in evidence at the trial "Witnesses who are acquainted with the property, and have observed the effects of the alleged tort have been generally allowed, after giving the facts to the jury, to testify as to the fact of damage." *The Baltimore & Ohio Railroad Company* v. *Sattler, supra.* An expert witness, testifying merely as an expert, is not permitted to testify either as to the fact or the amount of damage resulting from an injurious act, but may give his opinion as to the value of the property before and after the commission of the alleged tort, and he may state to the jury the reasons upon which his opinion is based, in order that they may judge of the value of his testimony. But in the case of a nuisance to private property there are many elements of damage for which the plaintiff might recover. The interference with the reasonable and comfortable use and enjoyment of the property, and any material injury to the property caused by the nuisance, loss of sales or rentals may be, under the facts of the case, proper items of damage for which recovery should be had. In order to prove the extent of loss on sales, or rental the plaintiff may be permitted to prove the market value of his property before and after the injury complained of, as that would be the best, and perhaps the most satisfactory way to enable the jury to judge of the testimony upon a claim for such damages ; or such evidence may be receivable to prove the serious nature, or character of the wrong complained of, although to introduce such evidence in a case of temporary depreciation in the value of property, when no loss of sales

or rental is shown, would tend to complicate the case, and confuse the issue.

4. We will now consider the exceptions of the defendants to the refusal of the Court to strike out certain testimony and their exceptions taken to the admissibility of evidence. The plaintiff, in his examination in chief, had given to the jury the facts which induced him to believe that the burning cinders from the defendants engine had set fire to and burned his stable. On cross-examination he declined to state that he knew as a fact, within his own knowledge, that the burning of the stable was caused by cinders emitted from the engines of the defendant. The defendants' first exception is to the refusal of the Court "to strike out the statements of the witness that his stable was set on fire." The plaintiff having testified to facts from which the jury might infer that the burning of the stable was caused by the burning cinders from the defendants' engines, the testimony could not be excluded. The second exception is the identical one presented and passed on adversely to the defendants in the former case. The third, fourth and fifth exceptions were taken to the action of the Court in permitting the witnesses Marriott, Barker and Hurst to give to the jury the reasons in support of their opinion as to the value placed by them on the plaintiff's lots. It is proper, as we have said, for the witness to state his reasons for the valuation he has placed upon the property. The sixth, seventh, eighth, ninth, tenth. eleventh, twelfth, thirteenth, fourteenth and fifteenth exceptions were taken to the action of the Court in allowing witnesses who were acquainted with the property, and observed the injurious effects caused thereto by the smoke, gas, cinders, &c., emitted from defendants' engines, to testify as to the fact of damage thereby caused to the property. This testimony was properly admitted. The sixteenth, seventeenth and eighteenth exceptions were taken to certain questions asked David Stewart, on re-examination, designed to show that the raising of fruit and vegetables was one of the uses which gave a market value to land in Baltimore City, and was one of the most advantageous uses to

which property might be applied in the city, and that it is such a use as would measure its market value. We do not find that the Court was wrong in refusing this testimony, or that any injury was thereby done the defendants. The evidence was not strictly admissible on re-examination, as it was an attempt to introduce a matter to which no reference was made either in the examination in chief, or in the cross-examination. Moreover, it appears that the witness subsequently testified that the purpose for which the plaintiff was using his lots, viz., "for pleasure grounds, or garden containing shade trees, flowers, shrubs, and generally as a gentleman's garden" in no way affected his opinion as to the value of the property.

The nineteenth exception was to the refusal of the Court to permit testimony as to the condition of the property at the time the witness was called to testify. This testimony was clearly immaterial and irrelevant, as the injury was treated as temporary, and the claim for damages limited to the institution of the suit. The twentieth exception was to the action of the Court in permitting certain questions to be asked the witness Caughey, on cross-examination. These questions were designed to test the accuracy and value of the testimony given in the examination in chief, and replies thereto were properly admitted in evidence. The twenty-first, twenty-second and twenty-third exceptions were taken to certain questions propounded to Mr. Martien, an expert witness called by the defendants. The object of these questions was to show on cross-examination that the wrong complained of in the declaration affected the value of the plaintiff's property, and the answers of the witness to these questions were clearly admissible. The defendant's third, fourth and fifth motions to strike out the testimony of David W. Laws, specified in the motion were properly overruled. The witness was familiar with the plaintiff's property, and in his evidence described the effects produced by the smoke, gas, vapors, &c., upon the property. We cannot see what possible objection there could be to this evidence. To say that the plaintiff could not prove these facts by a witness who had personal knowledge of the situation

and conditions would be to deny to the plaintiff the right to prove the facts which constitute his cause of action.    We find no error in any of the rulings of the Court on questions of evidence, or on the motions to strike out testimony.

5. We will now examine the rulings of the Court on the prayers.    The plaintiff having offered evidence tending to support the allegations of the *narr.* that the defendants had committed the wrongs therein stated, his first and only prayer submitted the finding of those facts and their injurious effects upon the property of the plaintiff to the jury.    It then told the jury that if they should find the facts recited in the prayer "then the jury may find for the plaintiff, and may allow him such damages as they may find from the evidence to have been directly caused *to his interest in the premises* by reason of the said smoke, gas, vapors, noise, and vibration from the time said effect was first produced down to the institution of this suit."    This prayer was too general and indefinite.    It failed to direct the jury as to the precise elements, or items of damage for which the plaintiff was entitled to recover, in case the jury should find the facts recited in the prayer.    It was the duty of the Court to have directed the jury's attention to these items of loss.    If the jury believed the plaintiff's evidence, he was entitled to recover damages for the interference to the reasonable and comfortable enjoyment of his property caused by the defendants, and also for any material injury or destruction of his property.    He had testified to the extent of this interference with his use and occupation of the property, and that his fence was destroyed, his fruit, &c., injured. For all such damages he was entitled to recover, but it was the duty of the Court to have pointed out and limited the items of loss for which the plaintiff might recover under the testimony.    This was not done by the granted prayer, but the jury was left very much at large as to the question of damage. They were told to allow such damages as they might find to have been "directly caused to his interest in the property" by the alleged tort.    The plaintiff had offered a great deal of evidence as to the depreciation of the value of the lots during the

period covered by the suit, but he offered no evidence of actual loss either by sales, or rental by reason of the mere diminution in the market value of the property. But under the general and unrestrained terms of the prayer the jury may have felt themselves at liberty, in the light of the evidence, to have assessessed substantial damages for this temporary diminution in the market value of the land in addition to damages for interference to the reasonable use and occupation of the property by the plaintiff, as well as damages for such material injury to the property itself as they may have found to have been occasioned by the defendants.

The defendants' first prayer was properly refused, *First*, because it was calculated to mislead the jury as to the real issues involved, *Secondly*, because there was no evidence in the case to support the hypotheses upon which the prayer was based, *Malone's Case*, 73 Md. 268; *Spangler's Case*, 86 Md. 562. The defendant's second prayer ought to have been granted, because, as we have said in discussing the plaintiff's first prayer, there is no evidence in the case of any loss or damage to the plaintiff caused by the mere diminution in the value of his lots. The defendant's third prayer was properly refused because it asserted that the plaintiff could not recover, if the jury should find the existence of a certain fact occurring after the institution of the suit, viz, that the drawing of steam engines over the tracks of the railroad had ceased. This was clearly erroneous. For error in granting the plaintiff's first prayer; and refusing the defendant's second prayer the judgment must be reversed.

Judgment reversed, a new trial awarded, with costs to the appellants.

(Decided January 9th, 1906.)

A motion for a re-argument was made in overruling the same.

BURKE, J., delivered the opinion of the Court.

Since the decision in this case the appellee has moved for a

re-argument. The judgment was reversed for error found in the plaintiff's first prayer, which had been granted by the trial Court. The reasons for the reversal are stated in the opinion of the Court, and need not be restated herein. The ground of the motion for the re-argument is that the effect of the decision in the former case of *Belt R. R. Co.* v. *Sattler*, 100 Md. 306, was to make that instruction the law of the case, binding both upon this Court, and the Court below, upon the subsequent trial. This position, it is contended by the appellee, is supported by the authority of the case of *Mahoney* v. *Mackubin, trustee*, 54 Md. 268. An examination of the records will show that the cases are wholly dissimilar. In *Mahoney's case*, the question as to the allowance of commissions to Mr. Mackubin was under consideration. The Court found that in a prior case between the same parties (*52 Md. 357*), upon an appeal from an order ratifying a sale, the Court had distinctly decided that Mr. Mackubin was entitled to the commissions, and therefore, it was held that the question could not be again litigated.

The Court said: "But as the case now stands we regard the question of the allowance of commissions as already conclusively adjudicated. The order ratifying the sale allowed the mortgagee, or trustee, "the usual commissions," as well as expenses. From that order an appeal was taken by the present appellant, Mahoney, and on that appeal that order was affirmed by this Court, and the cause was remanded. *The affirmance of that order* makes it the law of the case in all future proceedings therein, and binding not only upon the Court below, but upon this Court." But in the case of the *Belt R. R. Co.* v. *Sattler*, 100 Md. 306, the judgment was reversed solely for errors found to have been committed in the rulings as to the admissibility of testimony. The prayer was not affirmed, approved or discussed, and inasmuch as it was clearly wrong for the reasons stated in the opinion in the subsequent case, it should not have been granted, unless it had been approved by the Court on the former appeal, and this the record shows was not done.               *Motion overruled.*

(Decided April 26th, 1906.)