## HANCE ET UX. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 100, September Term, 1959.]

*Decided December 15, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Lawrence E. Ensor,* with whom was *Murray MacNabb,* on the brief, for appellants.

*Eugene G. Ricks, Special Attorney,* with whom were *C. Ferdinand Sybert, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *James A. Pine, Special Attorney,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

In this condemnation case, the appellants dispute the correctness of several of the rulings of the Circuit Court for Baltimore County on the admissibility, *vel non,* of evidence.

The State Roads Commission (Commission), in its program of improving the highway system of the State, is acquiring 0.74 of an acre of land located on the east side of Belair Road belonging to the appellants. The date of the taking was March 4, 1959. The tract is improved by three major buildings, referred to in the testimony as buildings one, two and three and a few outbuildings or sheds.

The testimony concerning building three is the center of the real controversy. This building was located at the rear of building two, and the first floor contained one apartment unit, while the remainder thereof had been used as a cider mill and later as a box factory. The upper floor was divided into makeshift apartment units. The pictures of it offered as exhibits by both sides, while only showing the exterior thereof, disclose that it is certainly not of very sturdy nor modern construction, and is, in fact, in a state of deterioration if not dilapidation.

The Commission first called Mr. Helfrich, a real estate appraiser, who, after duly qualifying, testified that the value of the property as of the date of the taking was $22,500, using the capitalization of rent method of appraisal, and, by using the summation method, the value was $19,800. In this case, he adopted the capitalization method with reference to buildings one and two, which indicated a value of $22,500 for the entire taking. In arriving at his total valuation, this witness (while placing a value on building three which was reflected in his total) did not use any capitalization method with reference to building three. During the course of his testimony, he was asked by appellee's counsel why he had failed to do so. He replied, "In my opinion, and I have not seen Building No. Three from the time I started on June 30th [1958] through to the present moment, where I feel it is fit for human habitation." The appellants moved to strike this answer, and the trial court's refusal to do so is assigned as error.

The only authority cited for the alleged error is *Battisto v. Perkins,* 210 Md. 542, 548, 124 A. 2d 288. There, the trial court had sustained objections to questions to two witnesses, one a real estate and appraisal expert, the other a builder and developer, as to "how builders in the Washington area customarily meet a drainage problem.". The defendants in an action for damages for the alleged acceleration of the natural flow of water produced testimony that they had employed an engineer to make a drainage plan for their development, which was ultimately installed. The Court, through Judge Henderson, pointed out that each location presents different drainage problems; consequently, mere generalizations as to custom or usage would not seem relevant. Also that the trial court had taken the view that drainage was an engineering problem, and the witnesses were not qualified to express opinions in that field, and, the question of the qualifications of an expert being largely in the discretion of the trial court, there was no error in the rulings.

We think the evidence objected to in the case at bar was clearly relevant and admissible. It was nothing more nor less than an expert, who had expressed his opinion as to value, stating his reasons for the opinion given; and these reasons may be elicited by the party who has called the witness, as well as by the opposite party upon cross-examination. In *Baltimore Belt R. R. Co. v. Sattler,* 102 Md. 595, 602, 62 A. 1125; 64 A. 507, this Court said, "[a]n expert witness * * * may give his opinion as to the value of the property * * * and he may state to the jury the reasons upon which his opinion is based, in order that they may judge of the value of his testimony." Again, in *Baltimore City v. Hurlock,* 113 Md. 674, 683, 78 A. 558, the Court quoted, with approval, from an Illinois case as follows: " 'The facts upon which opinions of expert witnesses as to the value of property proposed to be taken in condemnation proceedings, may be stated by them, either in chief, or upon cross-examination' * * * as their [the opinions'] weight and value depends largely upon the foundation of fact and reason upon which they stand." See also *M. & C. C. of Balto. v. Smith, etc. B. Co.,* 80 Md. 458, 472, 31 A. 423, 2 Wigmore, *Evidence* (3rd Ed.), Secs. 562,

655. Cf. *State Roads Comm. of Md. v. Novosel,* 203 Md. 619, 626, 102 A. 2d 563.

The appellants' next contention is their principal one, and covers many pages in their brief. We shall state and consider it as succinctly as possible. After Mr. Helfrich had testified as we have indicated above, Mr. Heinmuller, another real estate appraiser, was called by the Commission and stated in his opinion the entire property had a value of $22,800 at the time of the taking, using the summation method. He stated that, while he allowed a valuation for building three in his calculation of value, he did not attempt to compute any value for this building by assuming a rental schedule, because he did not believe the building could "properly and successfully be used for people to live in"; that he had seen many buildings of that character through the years, and, while it was possible that income could be secured by rentals, the "stability of such income, the possibility of its continuing, the possibility of keeping tenants in such a building for any length of time * * * is speculative, through experience, that I would give no value to such income." The Commission then produced Mr. Piel, the Building Engineer for Baltimore County, whose duties involve the enforcement of the Building Code, which embraces the issuance of permits, inspection of all buildings and construction and places of occupancy that have been erected. Mr. Piel produced a file, which contained three letters from him made in the regular course of business in his capacity as Building Engineer, to Mr. Hance, one of the appellants, relative to building three. The letters were dated January 24, 1952, September 9, 1955, and September 23, 1955, respectively, and were admitted, over objection, by the court, apparently upon the theory that they were "made in the regular course" of business and admissible under Code (1957), Article 35, Section 59.

The contents of the letters, summarized for brevity, were: In January, 1952, Mr. Piel notified Mr. Hance that sometime before, at about the time of a fire on the second floor, an inspection had been made of building three and it was "determined that this building is not safe or fit for human habitation" and Mr. Hance had been requested not to permit any

tenancy in the building until such time as it had been rehabilitated in such a manner that it would be acceptable to the Health, Fire and Building Departments. Mr. Piel was informed that an elderly man was living in the building and therefore requested Mr. Hance to discontinue the tenancy until the building was made safe for human occupancy. Under date of September 9, 1955, Mr. Piel notified Mr. Hance that another inspection of building three had been made as of that date, and it disclosed that the second floor was being used as apartments, which use would have to be discontinued due to the fact that the building "is not fit for human occupancy." In reply to this letter, Mr. Hance requested from Mr. Piel "some leniency"; and the third letter from Mr. Piel to Mr. Hance simply stated that he [Piel] understood Hance's feeling in the matter, but the building was not "fit for human occupancy." In addition to these three letters, the court admitted, over objection, the Building Code of Baltimore County of 1946, which was changed in 1956 by the adoption of a new one.

The appellants advance various and sundry reasons as to why the letters and the Building Code were inadmissible and their consideration by the jury prejudicial. Rather than to consider each reason separately, it will, we think, conserve considerable space if we simply state our reasons for concluding that the trial court's rulings were correct.

As the taking in the instant case was the entire parcel of land owned by the appellants, the issue for the jury's determination was: What was the fair market value, as of March 4, 1959, of the land taken as enhanced by the buildings upon it? *Baltimore City v. Himmel,* 135 Md. 65, 71, 107 A. 2d 522; 4 *Nichols, Eminent Domain* (3rd Ed.), Sec. 13.11 [2]. And the owners were not entitled to anything for building three unless it increased the market value of the land taken. 4 *Nichols, ibid.* Thus, as bearing upon the market value of the land, it was competent for the condemnee to show the advantageous factors relative to the land and building three and for the condemner to disclose their disadvantageous aspects. 5 *Nichols, op. cit.,* Sec. 18.11 [1].

It may properly be conceded that, ordinarily, a condemner

would not, in order to establish the value of property as of March 4, 1959, show its condition in 1952; but any evidence of such value as of March 4, 1959, which is competent under the general rules of evidence, and which is material and relevant to the question of value may be admitted. *Applefeld v. Baltimore,* 134 Md. 528, 107 A. 2d 347; *Williams v. New York, etc. R. Co.,* 153 Md. 102, 137 A. 2d 506; 5 *Nichols, op. cit.,* Sec. 18.11. In the instant case, the Commission offered evidence to show not only the condition of building three in 1952, but continuously thereafter down to and including the time of the taking on March 4, 1959, which included the improvements made thereon by the owners. Mr. Hance stated that the only improvements to this building since 1950 were repairs to the "apartment where the fire was, painting the outside and putting up the new steps." The jury's personal inspection of the property took place less than three months after the taking and the members thereof saw the improvements and the condition of the property, which had not been changed from the date of taking until the jury's inspection. This same jury heard the owners' two real estate appraisers testify, respectively, that the property was worth $44,950 and $42,000 using the summation method, and $42,533 and $45,500 by the capitalization of rents method. And the jury heard the testimony offered by the appellants that parts of building three had been (and possibly still were) being rented. After the testimony of both sides as to value was concluded, the trial judge included in his instructions the following: "The court instructs you that in fixing your award of compensation, * * * you are to base your findings of the taking, which was March 4, 1959, for the highest and best and most profitable use for which it was adapted, including the highest and best and most profitable use for which you, the Jury, may find the property of the Defendant could at the time of the taking have been applied whether or not in fact it was being applied to the highest and best use at that time." Thus, it is seen that the issue of value was fairly and fully placed before the jury for its determination, and we find no error in the court's rulings thereon. The Building Code was admissible as bearing upon the source and extent of the authority of the Building Engi-

neer and to corroborate the fact that the letters were written in the regular course of business.

What has been said above applies to a considerable extent to the next contention raised by the appellants. When Mr. Heinmuller, the Commission's real estate appraiser, was testifying, two photographs of building three, taken by the witness about nine months before March 4, 1959, were admitted over the objections of the appellants, and they assign this as error upon the part of the trial court, basing their objection principally upon the claim that these photographs were too remote and did "not fairly represent the conditions as they existed on March 4, 1959," the critical date of the taking, as improvements had been made upon the property after the pictures were taken and before March 4, 1959. The fallacy of this claim is that the photographs were not offered as representations of conditions as they existed on March 4, but as true representations of conditions as they existed when the pictures were actually taken, which, as we have pointed out above, was followed by testimony of the condition of the property, including the improvements, down to the time of the inspection thereof by the jury. The Commission even produced and introduced, without objection, photographs of building three taken after March 4, which showed the exterior improvements made thereon.

Scott, *Photographic Evidence,* Section 602, states the general proposition that photographs, if properly verified [no question of verification is here involved] and relevant to the issues in a case, may be admitted in evidence if they assist the jury in understanding the case or aid a witness in explaining his testimony; and the question of whether they are practically helpful or instructive to the jury is left to the discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a showing of an abuse of the discretion. The Maryland cases are in complete accord. In *Consol. Gas Co. v. Smith,* 109 Md. 186, 199, 72 A. 651, the Court stated that, "the use of photographs 'wherever it is important to describe a person, place, or thing, in a civil or criminal proceeding, for the purpose of explaining and applying the evidence' (17 *Cyc.,* 414) is so well established and

so fully recognized in our own decisions, that we must assume the objections must have been not generally to their use in the case, but rather to their method of introduction." And in *Corens v. State*, 185 Md. 561, 570, 45 A. 2d 340, it was said: "Whether a photograph is of any practical value in a particular case is a preliminary question for the trial court, and the court's exercise of discretion in determining the question is not open to review unless plainly arbitrary." See also *Weiller v. Weiss*, 124 Md. 461, 464, 92 A. 1028. Under the circumstances of this case, we think the photographs were relevant and the record fails to disclose that the trial judge abused his discretion.

On this point, the appellants cite three cases: *Snibbe v. Robinson*, 151 Md. 658, 135 A. 838; *Nelson v. Seiler*, 154 Md. 63, 139 A. 2d 504; and *Pearson v. State*, 182 Md. 1, 31 A. 2d 624. Nothing that we have said above conflicts with anything said in the opinions of these cases.

This brings us to the appellants' final claim of error on the part of the trial court. Mr. Strehlen, a real estate appraiser produced on behalf of the owners, after reciting several comparable sales in the vicinity of the property taken, was asked, "What is the next sale you used?" The witness gave the location of the sale, the names of the grantor and grantees, and stated that the date of the sale was April 21, 1959, some six weeks after the taking. Counsel for the Commission objected at this point and the objection was sustained, apparently on the sole ground that this sale was made *subsequent* to the taking.[1] While the proximity of time is apparent, there was no proffer made by the appellants to show that the sale was a voluntary one, that the property was comparable to that taken, that it was in the same locality or that the property involved in the sale had neither benefited from, nor been damaged by, the project occasioning the taking. However,

---

1. The briefs and record extract do not make it clear as to whether this sale was being offered as primary evidence of the value of the property taken, or to support the witness' opinion as to such value, or both. As it was admissible, we think, for any of these purposes subject to certain prerequisites which will be developed later, nothing more need be said concerning the same.

as the *only* reason for sustaining the objection was that the sale had been made *after* the taking, we may safely infer, for the purposes of ruling upon this point, that the appellants could have properly made the proffer as outlined above.

The appellee relies heavily upon the phraseology used in the early case of *Baltimore v. Brick Co.,* 80 Md. 458, 473, 31 A. 423, where it was held for the first time in this State that evidence of sales of similar property was admissible to assist in ascertaining the market value of land to be determined in the suit. It was there said: "We think * * * that the prices realized at sales of the land in question and of similar land in its vicinity, made within a reasonable period of time *theretofore,* being voluntary and not forced sales, are admissible in evidence, either on direct or cross-examination of witnesses conversant with the facts." (Emphasis supplied.) Great stress is placed upon the word "theretofore" by the Commission, which stated in its brief: "This rule laid down on February 28, 1895, has stood the test of time. * * * It is sound and just." There was no question in that case involving the admissibility or non-admissibility of a sale made *subsequent* to a taking by a condemner; and we find no case wherein this Court has heretofore been called upon to decide the point. The word "theretofore," as used in that opinion, was merely descriptive of the situation as it existed in that case: prices realized from voluntary sales of similar land in the vicinity made within a reasonable period of time *before* the critical date of fixing the value of the property involved had been offered and *admitted* over the objection of the appellant, and this Court sustained the ruling. There was no question raised, or ruling made, as to whether sales made *after* the critical date were admissible or not. By simply stating that sales, meeting certain other prerequisites, made within a reasonable period of time "theretofore" [before the crucial date of determining value] were admissible in evidence, the Court did not make, nor intimate, any ruling that sales made after the crucial date should be regarded as inadmissible. In *Williams v. New York, P. & N. R. Co.,* 153 Md. 102, 108, 137 A. 2d 506, a condemnation case, the Court said: "There is no doubt about the rule that, in an investi-

gation as to the market value of land, the price realized from voluntary sales of similar land in the vicinity *within a reasonable time* may be proved * * *." (Emphasis added.) Here, it will be noted the word "theretofore," was not used in stating the rule. In *Turner v. State Roads Comm.,* 213 Md. 428, 433, 132 A. 2d 455, we quoted the language used in the *Brick Co.,* case *supra,* but, again, the Court was not called upon to rule upon the admissibility of sales made subsequent to the taking.

1 *Orgel, Valuation under Eminent Domain,* Section 139, says: "Generally speaking, the courts make no distinction between sales occurring prior to the taking and sales consummated after the date when title has vested in the condemner. They usually admit the latter type of evidence, sometimes qualifying their ruling by stating that the sale adduced must not be too remote in time or that there must be no drastic change in market conditions." The cases and other text-writers amply support this statement by Mr. Orgel. One of the earliest decisions upon the subject and, perhaps, the leading case concerning the same is *Roberts v. City of Boston* (Mass., 1889), 21 N. E. 668. There, it was flatly held that two sales—one five months after the taking; the other twenty months thereafter—were admissible in evidence. This decision was followed in *Bartlett v. City of Medford* (Mass., 1925), 147 N. E. 739. See also *Morrison v. Cottonwood Dev. Co.* (Wyo., 1928), 266 P. 117, 121; *Pauly v. State* (Ct. of Claims, 1958), 179 N. Y. S. 2d 88; *Dormann v. State* (Supreme Ct. App. Div.), 167 N. Y. S. 2d 760; *Housing Authority v. Shambry* (Tex. Ct. of Civ. Appls., 1952), 252 S. W. 2d 963; *City of Houston v. Collins* (Tex. Ct. of Civ. Appls., 1958), 310 S. W. 2d 697, 705; 5 *Nichols, Eminent Domain,* 21.31[3]. Cf. *In Re West 205th Street* (N.Y.), 147 N. E. 361. Undoubtedly, the question of the admission of the price realized from the sale of other comparable property in the same locality usually involves those sales which have been made before the date of the taking. However, we agree with the great weight of authority upon the subject, and see no reason why the same rule should not be applicable to sales taking place subsequent to the taking. In either event, the

price sought to be offered must not have been materially enhanced or decreased by the project or improvement occasioning the taking. Cf. *Bonaparte v. M. & C. C. of Balto.*, 131 Md. 80, 83, 101 A. 594; *Cong. School v. Roads Commission*, 218 Md. 236, 249, 250, 146 A. 2d 558. Subject to the inference we drew above, we hold the evidence of this sale should have been admitted.

This does not mean, however, that the case must be remanded for a new trial. We are unable to see how the exclusion of this one sale worked any real harm to, or substantially prejudiced, the appellants. It was only one of several sales testified to by the witness, Strehlen, and additional sales were named by other witnesses. It is doubtful that this ruling of the trial court made *any* difference in the jury's verdict, much less a substantial one. It will be noted that there was also no proffer to show the price realized from this sale, and, while the price obtained would not affect the admissibility of the evidence we have been considering, it would, under certain circumstances, materially affect the question of prejudice.

Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice. This is especially true in condemnation proceedings. Such cases usually consume much time in trial, and are expensive in nature. As a rule, they are determined by a myriad of different items of evidence. The exclusion or admission of small items of evidence of doubtful materiality are not likely to be of great importance in the outcome of the case, and most courts refuse to set aside a verdict in cases of this kind, for error in the rulings on questions of evidence, unless, as indicated above, substantial prejudice be shown. 5 *Nichols, op. cit.*, Sec. 18.1[2]. We find no such error in the exclusion of the evidence of this one sale as would justify our reversing the ruling and remanding the case for a new trial.

*Judgment affirmed, with costs.*