## STATE ROADS COMMISSION OF MARYLAND *v.* KUENNE

[No. 431, September Term, 1964.]

*Decided October 20, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Edward W. Kreutzer, Special Attorney,* with whom were *Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellant.

*Jerrold V. Powers,* with whom were *James R. Buscher* and *Sasscer, Clagett & Powers* on the brief, for appellee.

HORNEY, J., delivered the majority opinion of the Court. PRESCOTT, C. J., dissents. Dissenting opinion at page 237, *infra.*

This appeal from the entry of a judgment of condemnation absolute on a special verdict in the form of an inquisition is based on the claim that the trial court committed reversible error when it denied the motion for the condemnor to strike the answer the condemnee made to a question which was not admissible.

The appellant-condemnor is the State Roads Commission of Maryland. The appellee-condemnee is Raymond E. Kuenne.

The condemned property, to be used in the construction and maintenance of the "Capital Beltway," was a part of a 128.5 acre farm located on Brightseat Road in Prince George's County. Of the 88.9 acres acquired, 15.07 acres were required for the right of way and the remaining 73.83 acres were taken because they were landlocked and of no use to the property owner. Since it was conceded that the taking was necessary and proper, the only question for the jury to determine was the fair market value of the property taken on the date of acquisition—November 21, 1962.

The appraisers agreed that the highest and best use of the property would have been for single family residential development. The two appraisers for the commission testified that the total fair market value of the property at the time of acquisition was $320,000 and $311,000, respectively, or approximately $3600 and $3500 per acre. The appraiser for the property owner valued the property taken at $329,000, or approximately $3700 per acre.

All of the appraisers relied on the "market data" approach to determine fair market value. None of the comparable sales in the area, however, on which the evaluations were based, were made as of the date of acquisition. The closest "before" sale appears to have been on November 1, 1962, and the closest "after" sale was on December 29, 1962. One of the appraisers testified that the area was a very dynamic one and that land values fluctuated so rapidly that unless market data was obtainable at the time of taking, it would be difficult to fix fair market value with certainty.

The owner was the last witness to testify. He was asked if he had an opinion as to the fair value of his property. He replied that it was worth approximately $6000 per acre. No objection was made to the question or answer, but when counsel asked him why it was worth that much, the owner replied "because this here, that was the offer." Counsel for the commission promptly moved that the answer be stricken, but the motion was denied.

The jury determined that the property taken had a value of $356,000 or approximately $4000 per acre, which was in excess of the valuations placed thereon by the experts, but was lower than the value stated by the owner himself.

It is clear that the lower court was in error when it refused to strike out the remark of the condemnee to the effect that his estimate of the value was based on an "offer." While the property owner has a right to voice his opinion of the market value of his property in a condemnation case, the established rule in this State is that evidence of an offer to purchase real property is not admissible to prove its value. *Western Union Telegraph Co. v. Ring,* 102 Md. 677, 62 Atl. 801 (1906) ; *Horner v. Beasley,* 105 Md. 193, 65 Atl. 820 (1907) ; *Grantmyre v. Darago,* 196 Md. 555, 77 A. 2d 148 (1950).

This does not necessarily mean that this case must be reversed and remanded for a new trial. The question here, it seems to us, is whether the error was so prejudicial as to require reversal. We think it was not. Aside from showing the commission of error, which as we have said was evident, the burden is on the complaining party to show that the error had a prejudicial effect on the outcome of the case. *Rippon v. Mercantile-Safe Deposit & Trust Co.,* 213 Md. 215, 131 A. 2d 695 (1957) ; *Adams v. Benson,* 208 Md. 261, 117 A. 2d 881 (1955) ; *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 71 A. 2d 442 (1950).

In *Hance v. State Roads Commission,* 221 Md. 164, 156 A. 2d 644 (1959), a recent case arising out of a condemnation proceeding, this Court, *per* Prescott, J., now C. J., had occasion to say, at p. 176:

> "Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice. This is especially true in condemnation proceedings. Such cases usually consume much time in trial and are expensive in nature. As a rule, they are determined by a myriad of different items of evidence. The exclusion or admission of small items of evidence of doubtful materiality are not likely to be of great importance in the outcome of the case, and most courts refuse to set aside a verdict in cases of this kind, for error in the rulings on questions of evidence, unless, as indicated above, substantial prejudice be shown."

Accord, 5 Nichols, *Eminent Domain* (1962 Supp. 1965), § 18.1[3].

We are aware that moneywise there is a substantial difference between the total award of the jury—$356,000 or $4000 per acre—and the average market value fixed by the expert witnesses—$320,000 or $3600 per acre. On a percentage basis, however, the difference is slight. We are therefore not convinced that the error committed by the trial court substantially prejudiced the condemnor in this case. Nor can we say that the jury award of $4000 per acre was clearly excessive or substantially unjust when that figure is compared with the average expert valuation of $3600 per acre, especially when the higher figure of $4000 is compared with the $6000 per acre the owner intimated he had been offered. Had the jury award been $6000 per acre or anywhere near that figure, it would be obvious that the error was prejudicial. Under the facts and circumstances of this case, however, where there was evidence to the effect that it was difficult to state with certainty a fair market value at the time of acquisition due to the fact that land values in the area were constantly rising, and where the jurors in viewing the property had an opportunity to judge for themselves what the land was fairly worth under the conditions then existing, we think the prejudice to the condemnor, if indeed there was any, was negligible. Other than this, there is little doubt that the commission will be able to recoup a substantial part of what it had to pay for the condemned property should it decide to sell the approximately 74 acres of landlocked property.

With regard to the motion to dismiss the appeal: even if it is assumed that the condemnor forfeited its right to appeal, as the condemnee contends, because the appeal was taken after the judgment and costs had been paid and satisfied, which is a question we need not now decide, the appellee has not been injured by our decision on the merits which we deemed to be expedient. The motion to dismiss will therefore be denied.

For the reasons herein stated, the judgment will be affirmed.

*Motion to dismiss appeal denied; judgment affirmed; appellant to pay the costs.*

PRESCOTT, C. J., filed the following dissenting opinion.

I regret that I am unable to concur in the result reached by my colleagues. We are in full agreement that the able and learned trial judge committed error in refusing to strike out certain testimony given before the jury, and that the jury's award was $27,000 in excess of the value placed upon appellees' property by appellees' own expert real estate appraiser, and $36,000 in excess of the highest estimate placed thereon by the Commission's experts. We are, likewise, in complete agreement on the principles of law involved; our only disagreement is as to whether the judge's refusal to strike the admittedly inadmissible testimony was "trivial, or formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case" (*State v. Britton,* 178 P. 2d 341, 344 [Wash.]), or whether it was "reasonably calculated to erroneously affect the jury in reaching its verdict." *Sonken-Galamba Corp. v. Hillman,* 111 S. W. 2d 853 (Tex. Civ. App.[1]) See also, *McGaw v. M. C. C. Balto.,* 131 Md. 430, and *Brack v. M. C. C. Balto.,* 125 Md. 378, in both of which cases, this Court reversed for errors regarding evidence, where the possible amount of money involved in the errors was only a fractional part of that involved in the case at bar. In the latter case, the opinion quoted with approval Chief Justice Rugg's statement in *Smith v. Commonwealth,* 210 Mass. 259, as follows: "Witnesses and jurors should not be permitted to enter the realm of speculation and swell damages beyond a present cash value under fair conditions of sale by fantastic visions as to future exigencies of growing communities."

To me, it is difficult to conceive a clearer example of harmful error than that presented here. The majority opinion correctly states: "He [the owner] was asked if he had an opinion as to the fair value of his property. He replied that it was worth

---

1. For additional versions of harmless and prejudicial errors, see State v. Reddington, 125 N. W. 2d 58, 62 (S. D.); Merchants' Ice & Cold Storage Co. v. Globe Brewing Co., 177 P. 2d 963, 967 (Cal. App.); Ashby v. Virginia Ry. & Power Co., 122 S. E. 104, 110 (Va.); Black, Law Dictionary, "Error."

approximately $6,000 per acre. No objection was made to the question or answer [and none is made here on appeal], but when counsel asked him why it was worth that much, the owner replied 'because this here, that was the offer.' Counsel for the Commission promptly moved that the answer be stricken, but the motion was denied."

When the court made this ruling in the presence of the jury, it was tantamount to informing them that the answer was relevant, admissible testimony, and the "offer" was a proper factor for them to consider in estimating the value of the subject-property; a factor, which the entire membership of this Court agrees could not lawfully be taken into consideration.

Of course, if its ruling were "trivial" and not calculated to affect the result, the error was harmless. But let's discuss this aspect of the ruling. No one at this time, with the exception, perhaps, of the jurors themselves, can state definitely the factors that actuated their award. However, an examination of the adjudicated cases and those encountered in actual experience (the author remembers back to when eminent domain proceedings in this State were conducted by Sheriffs' juries) will disclose that the occasions when a jury's award exceeds the largest value placed on the property by the condemnee's own expert real estate appraiser or appraisers are so singularly rare and infrequent that they may be considered as almost negligible. (The writer recalls no such occasion, although there must be some.) As a matter of practicality, the juries almost universally arrive at an award somewhere between the estimates made by the condemnor's and the condemnee's experts.

What then caused the award of $27,000 above the highest estimate of condemnee's own expert? The simple answer seems to be the jury felt that if the owner had been offered $6,000 per acre (the reasons why evidence of offers is not admissible as being unreliable are stated in the cases cited in the majority opinion), he probably was suffering a severe loss by the State taking his property, when, in reality, his own appraiser based his estimate of value largely upon the increase in value of the subject and adjacent properties caused by the public improvement for which the subject-property was being taken, and so testified (without objection being made thereto).

.

It scarcely can be seriously argued that the sum of $27,000, or, indeed, any substantial fraction thereof, is not a sizeable sum of money; it is more than the total amount involved in most appeals to this Court. The majority say that the error was harmless because, percentage-wise, the excess over the owner's appraiser's largest estimate did not exceed some 10%. No precedent has been found in which harmless error has been tested by any such standard. Carried one step further, it would mean that a $100,000 error would be "harmless" in a $1,000,000 judgment.

The fact that the State has to pay for the error committed should play no part in the determination of the matter; the case should be, and has been, treated as though individual parties were involved. I think the probability the State is being required to pay more than the fair market value of the property as a result of the error has been clearly established; hence, I would reverse and have a jury pass upon the question of value without the taint of inadmissible testimony. Such a course would not seriously inconvenience anyone, and everyone could feel that justice has been fairly administered.