## MAYOR AND CITY COUNCIL OF BALTIMORE v. SCHREIBER ET AL.

[No. 553, September Term, 1965.]

548

*Decided July 21, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Robert C. Harrison, Assistant City Solicitor of Baltimore,* with whom were *Joseph Allen, City Solicitor,* and *Clayton A. Dietrich, Chief Assistant City Solicitor,* on the brief, for the appellant.

No brief and no appearance for the appellees.

MARBURY, J., delivered the opinion of the Court.

This is an appeal by the Mayor and City Council of Baltimore (hereinafter referred to as the "City") from a judgment entered upon an inquisition returned by a jury assessing the fair market value of several parcels of land with improvements thereon of which one of the appellees,[1] Frank Schreiber, is the leasehold owner—they are all subject to annual ground rents. The subject properties are six separate rental properties which have been condemned for the purpose of a Baltimore Urban Renewal Project known as Madison Park North, and they are located at Nos. 1005, 1013, 1015, 1017, 1019, and 1021 West North Avenue (referred to hereinafter by number only). At the condemnation trial, over which Judge Joseph L. Carter presided, both the condemnor's and condemnees' expert witnesses treated, for purposes of dollar evaluation, the five properties located at Nos. 1013-1021 as one property, and treated No. 1005 separately.

The City's two real estate experts agreed in their testimony that Schreiber's leasehold interest in No. 1005 was worth $7,000

---

1. The other appellees are holders of a mortgage executed by Schreiber and his wife on the properties located at Nos. 1013-1021 West North Avenue.

and they were only $200 apart in their evaluation of his like interest in Nos. 1013-1021, *i.e.*, one said it was worth $8,800 and the other valued it at $9,000. The appellees presented but one real estate expert who opined that the fair market value of Schreiber's interest in No. 1005 was $12,500, and that of Nos. 1013-1021 was $19,000. The leasehold owner Schreiber took the stand and testified that in his opinion his interest in 1005 was worth $12,500. He also testified, over the strenuous objection on the part of the appellant's counsel, that he had paid $8,500 for No. 1005 in 1955. In regard to Nos. 1013-1021 Schreiber made no direct estimate of what he thought the property was worth, but did testify, again over objection, that he had paid $14,100 for his interest in those properties back in 1956, and that he had made approximately $4,500 capital improvements on them soon thereafter.

In his testimony appellees' expert witness remarked, when discussing the highest and best use of the property, that back in 1955 Mr. Schreiber had installed in No. 1005, where a store once had been, his own real estate office. There was no testimony that the office was still there and in fact no further mention was made of it, but when Mr. Schreiber took the stand, he was asked if it would be necessary for him to move his business when the City condemned his land. This question was objected to by appellant's counsel, Judge Carter properly sustained the objection, and the question was not answered.

The jury viewed the properties here in question and before retiring to consider the amount of their awards they were given explicit, easily understood, and accurate instructions by Judge Carter in regard to the factors which they should consider in arriving at their fair market value of the leasehold interest in the properties. The jury returned its inquisition awarding the total amount of $22,950 which was broken down by it as $9,250 for No. 1005, and $13,700 for Nos. 1013-1021, the total being approximately 40% higher than the estimate of the value of the appellees' interest made by the City's experts.

Raised on this appeal are three questions: (1) Was Schreiber properly allowed to testify as to what he had paid for these properties some nine and ten years before the condemnation proceedings; (2) under the facts of this case was it necessary

for the trial judge to instruct the jury that moving costs and good will were not to be considered by it in determining fair market value; and (3) was Schreiber properly allowed to testify to capital improvements on Nos. 1013-1021 inasmuch as he did not also testify as to the amount of their depreciation.

The general rule in this country and in this state is that "evidence of the price paid for condemned real property on a sale prior to eminent domain proceedings is admissible in the proceedings at least where the sale is voluntary, is *not too remote in point of time,* or is not otherwise shown to have no probative value." (Emphasis added.) Anno. 55 A.L.R. 2d 793-812, and cases therein cited at pages 794-797. *Pumphrey v. State Roads Commission,* 175 Md. 498, 2 A. 2d 668; *Williams v. New York, P. & N. R. Company,* 153 Md. 102, 137 Atl. 506. Moreover, we are aware that the well established rule is also that whether the condition of remoteness and other conditions have been met or not rests mainly in the sound discretion of the trial judge, and will not ordinarily be disturbed on appeal. See cases cited at pages 811-12 of 55 A.L.R. 2d. Nevertheless, the appellant contends that reversible error was committed below when the owner of the leasehold was permitted to testify as to what he paid for No. 1005 back in 1955 and then later permitted to testify as to what he paid for Nos. 1013-1021 in 1956, since these purchases are assertedly too remote in point of time to be of any probative value in the jury's determination of the fair market value at the time of trial.

There is no fixed period of time in which the purchase price of property sought to be condemned should be either admitted or excluded from evidence. Cf. *Taylor v. State Roads Comm.,* 224 Md. 92, 94, 167 A. 2d 127, where the same thing was said in regard to the time limit on comparable sales in the neighborhood. There are a myriad of circumstances to be considered in each case in determining if the time the purchase price was paid was too remote to have any probative value in aiding the jury's ascertainment of present fair market value. Such circumstances include: degree of change in the condition of the property, changes in the condition of the surrounding property or in the character of the neighborhood, economic growth in the area, etc. *Re. Ellis* (Ohio, 1955), 124 N. E. 2d

424, revd on other grounds *Re. Ohio Turnpike Com.* 131 N. E. 2d 397, app dismd *Ellis v. Ohio Turnpike Com.* 352 U. S. 806, 1 L. Ed. 2d 39. Consequently, the better rule seems to be that if, in the sound discretion of the trial judge, the time is not so remote as to destroy its probative value in regard to the issue of present fair market value, then he should admit the testimony and leave the weight of the evidence for the consideration of the jury, along with such distinguishing factors as may be brought to the attention of the jurors on cross-examination or otherwise. Cf. *Taylor, supra,* at page 95, and *Lustine v. State Roads Comm.,* 217 Md. 274, 142 A. 2d 566, which dealt with the rule in regard to remoteness of comparable sales in the neighborhood. *United States v. Becktold* (C. A. 8th Mo. 1942) 129 F. 2d 473; *Re. Appropriation of Easement For Highway Purposes,* (Ohio) 193 N. E. 2d 702; *State Highway Com. v. Jones,* (Ore.) 391 P. 2d 625; *Epstein v. Denver* (Colo.), 293 P. 2d 308; *Lembo v. Framingham* (Mass.), 115 N. E. 2d 370. From the examination of the record before us, we can not say that the price Schreiber paid for No. 1005 some ten years before condemnation or the price paid nine years before that date for Nos. 1013-1021 was so remote in point of time as to have no probative force in regard to present fair market value, and thus we find no abuse of discretion on the part of the trial judge in failing to sustain objections to this testimony.

The necessity for, and not the undisputed correctness of, the City's two proposed prayers for instructions to the jury is the second issue before us. In substance, those prayers would have informed the jury that an owner's business good will, or business moving expenses, were not to be considered by it in determining fair market value. It will be recalled that there was no evidence before the jury that Mr. Schreiber, at the time of trial, still operated his real estate business on the condemned land or that it' would be necessary for him to move that business, or any other, if the property was condemned. An unanswered question about whether moving costs of his business would be incurred is certainly not evidence that they would be incurred, and the jury would have to engage in the wildest kind of speculation in order to have considered either moving

costs or business good will of a business about which the evidence before it revealed nothing. Furthermore, there was nothing in the instructions to the jury which was ambiguous or which would otherwise mislead it into thinking that it should speculate on these matters. The purpose of jury instructions is neither to educate the jury generally in the field of law or to knock over every legalistic "straw man" in sight, but is to instruct the jury as to the law which can be applied to the facts before it. In the instant case the jury was properly instructed.

The last question to be here decided is whether the trial judge erred in allowing the property owner to testify as to the capital improvements he had made on Nos. 1013-1021. In condemnation cases, a property owner is presumably qualified to testify as to his opinion of the value of the land to be condemned. Likewise, the leasehold owner of a property which is subject to the payment of annual ground rents, such as Schreiber, would be presumed qualified because the foundation or basis of the presumption would be equally applicable to him. As stated in 5 Nichols (rev. 3d Ed.), *Eminent Domain,* Sec. 18.4 [2], page 198, the basis for the rule is that "merely by virtue of his ownership * * * he may be presumed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, [so as] to have a reasonably good idea of what it is worth." See also *Smith v. Potomac Electric,* 236 Md. 51, 60, 202 A. 2d 604, and cases therein cited. Of course, "the weight of his testimony is for the jury, and it is generally understood that the opinion of the owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention, thus taking the place of the *ad damnum* of the writ in ordinary civil cases." 5 Nichols (rev. 3d Ed.), *Eminent Domain,* Sec. 18.4 [2] pages 198-201. When Schreiber testified that he bought Nos. 1013-1021 for $14,100 and paid approximately $4,500 for capital improvements immediately thereafter, it would appear that he was indirectly testifying concerning his opinion as to what the properties were worth. The indirect evaluation was that the property was worth $18,600 because he had invested that much in it. It is to be noted that this figure is $400 less than his own expert's evaluation of Schreiber's interest.

As is pointed out by the City, Maryland cases have held that it is error for a real estate expert to compute current fair market value by the summation method when the appraiser computes the reproduction cost of the building by ascertaining the original cost plus the sum expended thereon for capital improvements without also computing the depreciation of the buildings. *McGaw v. M. & C. C. of Balto.*, 131 Md. 430, 434, 102 Atl. 544; *Baltimore City v. Himmel*, 135 Md. 65, 70, 107 Atl. 522. But the same rule would not apply to owners who are testifying as to how they arrived at their evaluation of the property, and in fact they need not give any factual calculation on the method used in ascertaining value, since their opinion of value, as above set forth, is based upon their presumed familiarity with the land.

The appellant apparently fears that the jury may have been misled into thinking that the owner was using the summation method of determining value, as their two experts had done. In the summation method the appraiser takes the cost of the land, plus reproduction cost of the building (new) which is placed thereon, and subtracts the depreciation of the building. Both of the City's experts testified that they used this method as one of the criteria in arriving at fair market value, and in doing so they both included a figure for the physical as well as the economic depreciation of the buildings located at Nos. 1013-1021. Here Schreiber used an acceptable method (from the City's point of view) of arriving at cost of land and reproduction cost (*i.e.*, combined cost of land and old buildings thereon, plus capital improvements) but appellant complains that he did not also include a figure for depreciation on the buildings. Even if it be assumed that an owner has to give a basis for his evaluation in the same manner as an expert, the failure of this biased and non-expert witness [2] to so estimate could not have prejudiced the condemnor and would not be reversible error. See *Hance v. State Roads Comm.*, 221 Md. 164, 176, 156 A. 2d 644; and *Taylor, supra*, at page 97. The trial judge cautioned the jury that Mr. Schreiber had not given a depreciation figure on the buildings located at 1013-1021 and that this

---

2. Here the owner was a real estate investor, but he was not called or qualified as an expert and thus he did not testify as such.

factor should be considered, and the jury had before it the uncontradicted testimony of the appellant's own experts as to what the structural depreciation had been. Cf. *McGaw, supra,* at page 434. Moreover, the inquisition shows that the jury had not been misled into taking as fair market value the cost of the land and the buildings thereon plus capital improvements, without also considering depreciation to the buildings because, if it had, the inquisition figure for Nos. 1013-1021 would have been $18,600 and not $13,700, the latter figure being lower than the original cost to Schreiber, even without considering capital improvements.

*Judgment affirmed. Costs to be paid by appellant.*