506 A.2d 634

Larry A. BRANNON et al.

v.

STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION.

No. 95, Sept. Term, 1984.

Court of Appeals of Maryland.

April 2, 1986.

Motion for Reconsideration Denied May 20, 1986.

Carl Harrison Lehmann, Upper Marlboro, for appellants.

Henry F. Leonnig, Asst. Atty. Gen., Upper Marlboro (Stephen H. Sachs, Atty. Gen. and Nolan H. Rogers, Asst. Atty. Gen., on brief, Baltimore), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ.

COLE, Judge.

In this case, we shall delineate the permissible scope of the landowner's testimony in a condemnation proceeding where, for purposes of assessing the amount of damages caused by the partial taking, the before-taking and after-taking value of the landowner's property is in dispute.

We summarize the facts as follows. The State filed a petition in the Circuit Court for Prince George's County to acquire one-third of an acre from Mr. and Mrs. Brannon's six and two-third acre residential property. The State deemed it necessary to condemn this portion of the Brannon's property to construct part of relocated Maryland Rt. 193, a dual-lane, controlled-access highway. Upon filing its condemnation petition, the State deposited with the circuit court $3,114.00, which it considered to be the fair market value of the property taken and which included damages, if any, to the remainder of the Brannon's property. After a hearing before the Board of Property Review of Prince George's County, the Brannons were awarded $3,180.00 for the land taken plus $10,000 for resulting damage to the remainder of their property.

Dissatisfied with the award, the State filed a "quick-take" condemnation petition in the Circuit Court for Prince George's County. At trial, the Brannons introduced only one witness, Mrs. Brannon, who testified as to her opinion of the value of her property both before and after the taking. Mrs. Brannon assigned to her property a before-taking value of $325,000 and an after-taking value of $275,000, a difference of $50,000. At this point in the direct examination, Mrs. Brannon's counsel asked for the reasons that she assigned a diminished value to her property after the taking. She responded as follows:

In 1976, when Mr. Brannon and I sought out a home of this caliber, it took us a long time to do so. Yes, the house was the main attraction. We had to use a lot of

imagination because of the work that was involved. But it was the house and the property, the combination of the two, that sold us on this place. We appreciated the country atmosphere that it had to offer us. At the time our children were very small. The quietness, the environment, the feeling that my children had their freedom in this country atmosphere, and in 1977 when I first learned that this highway was coming through, I was very distraught because of what it was going to do to us. My first reaction was that the quietness would be gone. We would have the noise from the traffic on the road. We would have the litter, the pollution. Just the idea of the closeness of the highway to us, what it was doing to this piece of property was altering it—

\*      \*      \*      \*      \*      \*

—From a country atmosphere—

\*      \*      \*      \*      \*      \*

The highway was altering this piece of property entirely and we were both very saddened about it. There's nothing we can do about the highway, but I do feel that Mr. Brannon and I should be compensated for the damages it's causing to our property.

The State objected several times to Mrs. Brannon's answer, and specifically to Mrs. Brannon's claim of lack of country atmosphere or losing country atmosphere, on the ground that a change in the setting of the property from "rural to suburban or suburban to rural" as a result of the use of the condemned property is not a proper item of damage in a condemnation case. The trial judge overruled each objection. Later in the trial, the State asked for jury instructions to the effect that a change in the neighborhood is not a compensable element of damages. The State also asked for an instruction stating that "no damages are allowable with regard to normal dust and noise incidental to the construction of a highway or its use." The trial judge denied these instructions. Following the trial, the jury returned an inquisition in the Brannon's favor of $23,500.

The State appealed to the intermediate appellate court and set forth, among others,[1] the following assignments of error:

1. The lower court erred in permitting Mrs. Brannon to base her claim for damages on a change in the neighborhood and in failing to instruct the jury to disregard such a claim.

2. The lower court erred in failing to instruct the jury to disregard appellees' claim that noise or dust from the road damaged their remaining land.

The intermediate appellate court, in an opinion reported at 58 Md.App. 357, 473 A.2d 484 (1984), reversed the circuit court's judgment as to both of these assignments of error and remanded the case for a new trial. The Brannons filed a petition for certiorari with this Court, and we granted it to address the following questions:

1. Did the [intermediate appellate] court err, holding that evidence of the diminution of the value of the remainder attributable to a change of the setting of the property should have been stricken, and the jury instructed to disallow any diminution resulting from such change?

2. Did the [intermediate appellate] court err in holding that the jury should have been instructed to find whether "specific detriments" (i.e., "... noise, traffic, dust, dirt and pollution; ..."), flowing from the part taken were separable from those attributable to those portions of the project on lands taken from abutting owners, then, if inseparable, to assess the effects of all such specific detriments upon the value of the

---

1. The intermediate appellate court also entertained the State's arguments that the circuit court erred in refusing to permit certain rebuttal evidence and that the lower court erred in precluding final argument as to the inference to be drawn from the failure of the property owners to call their appraisers as witnesses. Because we granted certiorari only as to the issues addressed in this opinion, we do not consider the issues dealing with rebuttal evidence and final argument.

remainder, *however,* if separable, to assign only those effects issuing from the part taken?

Initially, we shall make a few general observations regarding the law in Maryland with respect to the measure of damages in partial taking cases. Upon examination of the applicable statute, Maryland Code (1981), § 12–104(b) of the Real Property Article, and our case law concerning partial takings, it is apparent that two different methods of assessing damages have emerged. Section 12–104(b) sets forth the measure of damages as "the actual value of the part taken plus any severance or resulting damages to the remaining land by reason of the taking and of future use by the plaintiff of the part taken." [2] On the other hand, the second method of assessing damages, embodied in our case law, sets forth the measure of damages as "the difference between the fair market value of the entire tract before the taking and the fair market value of what is left thereafter." *Big Pool v. State Roads Comm'n,* 245 Md. 108, 113, 225 A.2d 283, 285 (1967) (citing *Baltimore v. State Roads Comm'n,* 232 Md. 145, 152, 192 A.2d 271, 276 (1963)). *See also Oxon Hill Rec. Club v. Pr. Geo's Co.,* 281 Md. 105, 107–08, 375 A.2d 564, 566 (1977); *Reindollar v. Kaiser,* 195 Md. 314, 319, 73 A.2d 493, 494–95 (1950); *Pumphrey v. State Roads Comm'n,* 175 Md. 498, 505–06, 2 A.2d 668, 671 (1938). We have recognized that these two measures are roughly equivalent to each other. *See Oxon Hill Rec. Club v. Pr. Geo's Co., supra,* 281 Md. at 107, 375 A.2d at 566; *Duvall v. Potomac Electric,* 234 Md. 42, 45, 197 A.2d 893, 895 (1964). Indeed, the goal of both measures is identical: "to put the landowner in as good a pecuniary position as if no taking had occurred." *Dodson v. Anne Arundel Co.,* 294 Md. 490, 494, 451 A.2d 317, 320 (1982). However, the

---

**2.** If the part taken has fair market value independent of the tract as a whole, the landowner, under the statute, may recover an amount equal to its fair market value, as long as the fair market value is not less than the amount recoverable under the "actual value plus damages" measure.

routes by which these measures achieve this goal are slightly different.

Under the statutory or "actual value plus damages" method, once the actual value of the part taken has been determined, the landowner bears the burden of establishing his severance damages—"by reason of the taking"—and his resulting or consequential damages—"by reason of the future use of the part taken." *See Church v. State Roads Comm'n,* 249 Md. 406, 413, 240 A.2d 255, 258–59 (1968); *State Roads Comm'n v. Warriner,* 211 Md. 480, 491, 128 A.2d 248, 254 (1957). *See also* 4A *Nichols: The Law of Eminent Domain,* § 14.21[2], at 14–61 (J. Sackman rev. 3d ed. 1980) (hereinafter *"Nichols"*). In establishing damages to the remainder, the landowner may employ experts to measure and quantify the various elements of damage, such as noise and pollution.

Under the second or before/after method of assessing damages, the landowner need not offer quantified evidence of each element of damage as a separate and distinct item of loss. Rather, the effects of the taking and future use of the taken portion upon the remainder of the tract are considered by the trier of fact with respect to their impact upon the fair market value of the property. As is written in *Nichols,*

> the question for the tribunal which makes the award is merely how much less is the tract as a whole worth with a piece taken out of it . . . than it was worth before the dismemberment. It necessarily follows that, in determining the value of the property after the taking (for the purpose of estimating the amount of depreciation) the tribunal which assesses the damages is bound to take into consideration every element which a purchaser willing but not obliged would consider. The separate items may be considered *not as specific items of loss, but merely with respect to their effect upon market value.*

*Id.,* § 14.232, at 14–122 to 123 (emphasis supplied). In establishing the before and after taking value of the proper-

ty, the landowner himself may testify as to the value of his property and the diminution in value thereof, *Baltimore City v. Schreiber,* 243 Md. 546, 553, 221 A.2d 663, 666–67 (1965), and may also employ expert witnesses to render opinions as to the value. *See State Road Comm'n v. Adams,* 238 Md. 371, 375–77, 209 A.2d 247, 249–50 (1965). Of course, the jury's view of the property, under either method of assessing damages, constitutes real evidence in the case and may be used by the jurors in determining the proper weight to be accorded to the testimony of any witness. *Bergeman v. State Roads Comm'n,* 218 Md. 137, 142, 146 A.2d 48, 51 (1958).

■ In sum, the existence of two methods of assessing damages in a partial taking case provides flexibility to the landowner in establishing damages to the remainder of his property. The landowner may choose to offer direct evidence, in the form of expert testimony, as to the types and amounts of damages caused by the State's future use of the taken portion. Or, the landowner may choose to offer no direct evidence of consequential damages and, instead, offer evidence pertaining to the before-taking and after-taking value of the property. Where the landowner chooses the latter alternative, he risks a lower damages award because he has offered no direct proof of consequential damages. On the other hand, he is also spared the expense of employing expert witnesses to testify to specific items of consequential damages.

■ Under the before/after method of assessing damages, the landowner is the most logical person to testify as to the property's value because of his familiarity with it. Indeed, the landowner occupies a special position where he testifies as to the value of his property. Unlike an expert witness, the owner of the property is presumptively competent to express his opinion of its value. *See, e.g., Stickell v. City of Baltimore,* 252 Md. 464, 473 n. 1, 250 A.2d 541, 546 n. 1 (1969); *Cofflin v. State,* 230 Md. 139, 142, 186 A.2d 216, 218–19 (1962); *State Roads Comm'n v. Novosel,* 203 Md.

619, 624–25, 102 A.2d 563, 565 (1953). This presumption is based upon the owner's familiarity with the land, that "merely by virtue of his ownership ... he may be presumed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, [so as] to have a reasonably good idea of what it is worth." *Baltimore City v. Schreiber*, 243 Md. 546, 553, 221 A.2d 663, 666 (1965) (quoting 5 *Nichols, supra*, § 18.4[2], at 198). As the U.S. Court of Appeals for the District of Columbia has stated:

> The owner does not testify as just another expert, but from his unique position as the individual who stands to gain or lose the most from the tribunal's determination of the value of his property. The owner is draped with no cloak of expertise; the jury is free to evaluate his testimony, even to discard it altogether, in weighing the evidence.

*District of Columbia v. 13 Parcels of Land, Etc.*, 534 F.2d 337, 340 (D.C.Cir.1976). The landowner is not required to show or even to possess an understanding of valuation in condemnation cases; he need not be aware either of the statutory standard of damages that applies to condemnation actions or of the statutory definition of fair market value. *See Stickell v. City of Baltimore, supra*, 252 Md. at 473 n. 1, 250 A.2d at 546 n. 1; *see also Baltimore City v. Schreiber, supra*, 243 Md. at 553–54, 221 A.2d at 666–67. Further, the landowner is not required to give any explanation of his testimony, *id.* at 553, 256 A.2d at 667, and his estimate (without explanation) is, in itself, unobjectionable no matter how unreasonable that estimate may be. *Greater Balto. Mkt. Ass'n v. Duvall*, 255 Md. 90, 93, 256 A.2d 882, 884 (1969). Of course, the jury is not compelled to accept the owner's assessment of the property's value; it may give his opinion as much or as little weight as it deems appropriate. *Id., Baltimore City v. Schreiber, supra*, 243 Md. at 553, 221 A.2d at 667.

Where the landowner testifies as to his estimate of the value of his property, the admissibility of the basis or

rationale supporting his estimate is a necessary corollary of the admissibility of the estimate itself. The estimate is of little utility to the trier of fact without an explanation of the reasons supporting it. "To permit a witness to express an opinion of value without allowing him to set forth the basis for his opinion is to deny the trier of fact a basis for weighing and evaluating his testimony." *Denver Urban Ren. Auth. v. Berglund-Cherne, Co.*, 193 Colo. 562, 568 P.2d 478, 483 (1977); *see Central of Georgia Railway Co. v. Little*, 126 Ga.App. 502, 506, 191 S.E.2d 105, 109 (1972). As stated above, the weight given to the owner's estimate of value is for the jury. The admissibility of the basis of the owner's estimate gives the jury the proper tools to assess its weight.

■ The permissible scope of the owner's testimony is defined by the foundation supporting the admissibility of his valuation, i.e., his familiarity with the property. Where the owner's reasons for assigning a particular value to his property are derived from his familiarity with the property, the owner's valuation and his explanation of his reasons for that valuation are admissible. Where the owner's opinion is derived from a source other than his familiarity, his testimony may constitute grounds for objection. The case of *State Roads Comm'n v. Kuenne*, 240 Md. 232, 213 A.2d 567 (1964) illustrates the point. In *Kuenne*, a condemnation case, the owner rendered an opinion as to the value of his property. After noting the general rule admitting the owner's estimate of value in a condemnation case, this Court excluded the owner's testimony because "the established rule in this State is that evidence of an offer to purchase real property is not admissible to prove its value." *Id.* at 235, 213 A.2d at 568. The basis for the admissibility of the owner's opinion of value is his intimate experience and knowledge of the land itself. Thus his familiarity with the property should constitute the source of his opinion as to its value.

■ We now turn to the application of these principles to the facts of the instant case. Mrs. Brannon testified to her opinion of the after-taking value of the remainder of her property. She was then asked to explain her reasons for assigning a diminished value to the property. Mrs. Brannon noted the beneficial qualities that she believed the property possessed—the "country atmosphere" and the "quietness"—and she pointed out the manner in which the property would be adversely affected by the State's intended use of the land taken—"the noise," "the litter," and "the pollution." This explanation clearly demonstrates that her intimate familiarity with the property constituted the basis for her opinion of its value. Contrary to the State's contention, her reference to these detrimental effects did not constitute an attempt to offer direct evidence of damages, but rather served to undergird her estimate of the diminished value of her property. These effects simply formed part of the basis for Mrs. Brannon's estimate of the after-taking value of her property. To the extent that they affect the market value of the remainder, the presence of noise, litter, and pollution constituted a valid consideration in assigning an after-taking value to the property.

■ The State also contends that Mrs. Brannon's testimony "suggested to the jury that a change in the neighborhood setting was being brought about by the new road, and that this change was the basis upon which Mrs. Brannon claimed her damages." We disagree with the State's interpretation of Mrs. Brannon's disputed testimony. Mrs. Brannon's statement of her reasons for assigning a diminished value to the remainder of her property makes no mention of a change in the "neighborhood." A fair reading of her testimony indicates that the object of her concern was a change in *her* property, not a change in the surrounding area. Mrs. Brannon stated, "Just the idea of the closeness of the highway to us, what it was doing to *this piece of property* was altering it ... from a country atmosphere ..." and also "the highway was altering *this piece of property entirely...*." (Emphasis supplied.) Clearly,

the focus of Mrs. Brannon's testimony was the direct impact of the State's future use of the taken portion upon her property, not its impact upon the property's "setting" within the surrounding area. Contrary to the State's contention, Mrs. Brannon's testimony does not give rise to the issue of whether "the appellants have a property right in the enjoyment of their neighbors' fields and trees and their children roaming through them[.]" The scope of Mrs. Brannon's testimony was confined to the effect of the taking upon the intrinsic character of the remainder of her property; she did not claim a property right in the enjoyment of her neighbors' property. Her reference to a change in the nature of the property related solely to her estimate of the property's diminished value. As with noise, litter, and pollution, this type of change is relevant in determining the after-taking value of the remainder of the property. *See, e.g., Dennison v. State,* 22 N.Y.2d 409, 293 N.Y.S.2d 68, 239 N.E.2d 708 (1968); *City of Yonkers v. State,* 40 N.Y.2d 408, 386 N.Y.S.2d 865, 353 N.E.2d 829 (1976); *Mississippi State Highway Comm'n v. Colonial Inn, Inc.,* 246 Miss. 422, 149 So.2d 851 (1963). As is written in 4A *Nichols, supra,* § 14.24 at 14–128.1:

> Where a partial taking is effected by eminent domain, the general rule is that any element of damage which results in a diminution of value of the remainder area is a factor which must be considered. The different elements of damage to remaining land recoverable when part of a tract is taken are as numerous as the possible forms of injury.

We believe this position is consistent with the language of Maryland Code (1981), § 12–104(b) of the Real Property Article, which requires compensation for *"any* severance or resulting damage to the remaining land," (emphasis supplied) and is also consistent with the general goal of just compensation, which is "to put the landowner in as good a pecuniary position as if no taking had occurred." *Dodson v. Anne Arundel County, supra,* 294 Md. at 494, 451 A.2d at 320. Thus, we think that the trial court acted properly in

refusing to strike Mrs. Brannon's testimony as pertaining
to a change in the neighborhood and also in refusing to give
the State's requested instruction concerning changes in the
neighborhood.

■ In its opinion, the Court of Special Appeals employed
a "separability" theory in analyzing the facts of this case.
The court's analysis requires the trier of fact to determine
whether the damage to the remainder of condemnee's prop-
erty caused by the part of the public project on the con-
demned portion is separable from the damage to the proper-
ty caused by the public project on land acquired from
others. If separable, the landowner is compensated, under
the rule, for all damages done to his remainder by the part
of the public project on the condemned portion. If insepara-
ble, the landowner is compensated for all damages to his
remainder by the entire project. The intermediate appellate
court remanded the case for retrial "for the purpose of
determining whether the damages are separable and there-
after which standard of damage is applicable." *State
Roads Comm'n v. Brannon, supra,* 58 Md.App. at 383, 473
A.2d at 496. The intermediate court went too far. In our
judgment, the evidence in this case fails to generate the
issue of separability. Mrs. Brannon offered no direct evi-
dence of consequential damages and made no attempt to
quantify the amount of damages. Thus, we see no reason
to ask the jury to distinguish the source of any damage.
The sole reference to the effects of the State's use of the
part taken came in the context of Mrs. Brannon's explana-
tion of her estimate of the property's after-taking value.
Because these factors may affect the property's fair market
value, they could properly be considered by the jury in
determining just compensation under the before/after
method of assessing damages.

It is obvious to us that the jury did consider the land-
owner's testimony as bearing upon the after-taking value of
the remainder of Mrs. Brannon's property. It is further
obvious that the jury attached more weight to the land-

owner's evaluation than the State anticipated. This they had the right to do. The judgment of the circuit court should have been affirmed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY.

APPELLEE TO PAY THE COSTS.